**[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 67.]**

HAMILTON ET AL., APPELLANTS AND CROSS-APPELLEES, *v*. OHIO SAVINGS BANK, APPELLEE AND CROSS-APPELLANT.

[Cite as *Hamilton v. Ohio Sav. Bank*, 1998-Ohio-365.]

*Banks—Action brought by individuals on behalf of themselves and others similarly situated to challenge certain methods used to amortize residential mortgage loans by bank—Determining whether, and to what extent, trial court properly refused to certify case as a class action pursuant to Civ.R. 23.*

(No. 96-2624—Submitted January 20, 1998—Decided June 10, 1998.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Cuyahoga County, No. 69757.

_____

{¶ 1} This is an appeal and cross-appeal from a decision affirming in part and reversing in part the trial court's order denying certification of a class action. The action was brought by plaintiffs-appellants and cross-appellees, Frances E. Hamilton, Barbara A. Seidel, and George L. Seidel, on behalf of themselves and others similarly situated, against defendant-appellee and cross-appellant, Ohio Savings Bank ("Ohio Savings"), to challenge certain methods used to amortize their residential mortgage loans.

{¶ 2} In *Hamilton v. Ohio Sav. Bank* (1994), 70 Ohio St.3d 137, 637 N.E.2d 887, we set forth the background facts regarding appellants' statutory and common-law claims and reversed summary judgment for Ohio Savings. On remand, the trial court took up the matter of class action certification.

{¶ 3} Appellants had moved for class certification pursuant to Civ.R. 23(A), (B)(2) and (B)(3). In their motion, appellants set forth both their pivotal allegations and the classes which they seek to have certified, as follows:

"The class of persons whom Plaintiffs seek to represent includes all mortgagors on whose mortgages the Defendant has, or is still, calculating interest according to a method which has been referred to throughout this litigation as the '365/360' method. The mortgagors whom Plaintiffs seek to represent have executed mortgage notes which have either been retired or are still extant and which contain a clause that states, in possibly one or more forms, that the Defendant will calculate interest as follows:

" 'Such interest shall be computed monthly by (i) obtaining a daily interest factor based upon a 360-day year, (ii) multiplying such factor by the actual number of days in each calendar month, and (iii) applying the result against the computed balance of this note outstanding on the last day of each month.'

"The gravamen of this action is that the above-quoted interest calculation method, in effect, charges the potential class members interest at rates that are in excess of their agreed contract rates of interest. For the sake of clarity and administrative ease, it is proposed that the Court certify two (2) subclasses of mortgagors. The Court's power to make subclasses can be found in Ohio Civ.R. 23(C)(4).

"Class I should consist of all mortgagors whose mortgages will not amortize within their stated terms. With respect to these mortgages, the Defendant has established the monthly payment amounts pursuant to the '360/360' method while simultaneously using the '365/360' method in order to calculate interest charges each month. In addition to being charged interest that exceeds their agreed contract rates, the mortgagors in Class I have been saddled with mortgages which will not amortize within their agreed terms. That is, mortgagors who comprise this subclass will be required to make balloon payments at the end of the terms of their mortgages before the Defendant will remove its mortgage liens. Discovery thus far indicates that those mortgagors who comprise Class I, for the most part, executed their mortgages *prior* to April of 1978.

"* * * The mortgagors who comprise Class II, for the most part, executed their mortgages *after* April of 1978. The mortgagors in Class II executed mortgages wherein interest has been or is being calculated pursuant to the '365/360' method. However, unlike Class I, the members of Class II have made monthly payments in amounts that were established according to the '365/360' method. Thus, although members of Class II are being charged interest at rates that exceed the agreed interest rates, these class members will not be required to make balloon payments in order to retire their notes. This is because members of Class II are paying a small portion of the Defendant's unlawful interest charge each month. Nonetheless, the members of Class II are paying interest at rates that exceed their agreed contract rates." (Emphasis *sic*.)

{¶ 4} On October 20, 1995, the trial court summarily denied appellants' motion. The court's order reads, in its entirety: "[Plaintiff] Francis [*sic*] Hamilton's motion for class certification is denied. No just cause for delay."

{¶ 5} The court of appeals, in a two-to-one decision, affirmed in part and reversed in part and remanded the cause. In so doing, the court of appeals held that the trial court erred in failing to certify those subclasses with outstanding mortgage loans pursuant to Civ.R. 23(B)(2), but properly denied certification to those subclasses with retired mortgage loans pursuant to Civ.R. 23(B)(3). In particular, the court found, with respect to the latter subclasses, that "the statute of limitations issue, and the equitable tolling thereof, applicable to each individual member of these subclasses predominates over the common questions of the subclass. * * * [W]hen the borrowers discovered or should have discovered the amortization problem in their loans, necessarily involves an independent inquiry for each potential member of the subclass."

{¶ 6} In a separate opinion, Judge Diane Karpinski, concurring in part and dissenting in part, reasoned that "class certification should not be denied to [these] subclasses, because the statute of limitations issue does not predominate over the

common questions of the subclass." She concluded that the entire prospective class should have been certified.

{¶ 7} The cause is now before this court pursuant to the allowance of a discretionary appeal and cross-appeal.

_____

*Law Offices of Steven M. Weiss* and *Steven M. Weiss; Robert E. Sweeney Co., L.P.A.,* and *Robert E. Sweeney,* for appellants and cross-appellees.

*Arter & Hadden, Hugh M. Stanley, Jr.,* and *Irene C. Keyse-Walker; Marc W. Freimuth* and *Roy E. Lachman*, for appellee and cross-appellant.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 8} The single issue presented by appellant's appeal and Ohio Savings' cross-appeal is whether, and to what extent, the trial court properly refused to certify this case as a class action pursuant to Civ.R. 23.

I

STANDARD OF REVIEW

{¶ 9} In *Marks v. C.P. Chem. Co., Inc.* (1987), 31 Ohio St.3d 200, 31 OBR 398, 509 N.E.2d 1249, at the syllabus, the court held that "[a] trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion."

{¶ 10} Appellants suggest that because there was no live testimony before the trial court and this court has before it the same written record, we should conduct a *de novo* review "akin to the review of a lower court's grant of summary judgment." We disagree.

{¶ 11} Appellants cite no case in which an appellate court has opted for a *de novo* review over an abuse-of-discretion standard in this context. To the contrary, appellate courts overwhelmingly, if not universally, give trial courts broad discretion in deciding whether to certify a class. See, generally, 5 Moore's Federal

Practice (3 Ed.1997) 23-25 to 23-27, Section 23.04. Moreover, the appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket. *Marks, supra*, 31 Ohio St.3d at 201, 31 OBR at 399, 509 N.E.2d at 1252; *In re NLO, Inc.* (C.A.6, 1993), 5 F.3d 154, 157. Thus, the fact that there was no live testimony in the trial court is inconsequential as concerns the applicability of the abuse-of-discretion standard to class action determinations.

{¶ 12} However, the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied. *Gen. Tel. Co. of the Southwest v. Falcon* (1982), 457 U.S. 147, 160-161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740, 752; *Gulf Oil Co. v. Bernard* (1981), 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693, 703; *Castano v. Am. Tobacco Co.* (C.A.5, 1996), 84 F.3d 734, 740; *In re Am. Med. Sys., Inc.* (C.A.6, 1996), 75 F.3d 1069, 1079.

{¶ 13} While there is no explicit requirement in Civ.R. 23 that the trial court make formal findings to support its decision on a motion for class certification, there are compelling policy reasons for doing so. Aside from the obvious practical importance, articulation of the reasons for the decision tends to provide a firm basis upon which an appellate court can determine that the trial court exercised its discretion within the framework of Civ.R. 23, and discourages reversal on the ground that the appellate judges might have decided differently had they been the original decisionmakers. On the other hand, the failure to provide an articulated rationale greatly hampers an appellate inquiry into whether the relevant Civ.R. 23 factors were properly applied by the trial court and given appropriate weight, and

such an unarticulated decision is less likely to convince the reviewing court that the ruling was consistent with the sound exercise of discretion. See *Ojalvo v. Ohio State Univ. Bd. of Trustees* (1984), 12 Ohio St.3d 230, 232, 12 OBR 313, 315, 466 N.E.2d 875, 876-877; *Valentino v. Carter-Wallace, Inc.* (C.A.9, 1996), 97 F.3d 1227, 1234-1235; *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litigation* (C.A.3, 1995), 55 F.3d 768, 794; *Eisenberg v. Gagnon* (C.A.3, 1985), 766 F.2d 770, 785; *Interpace Corp. v. Philadelphia* (C.A.3, 1971), 438 F.2d 401, 404.

**{¶ 14}** It is exceedingly difficult to apply an abuse-of-discretion standard to Civ.R. 23 determinations where, as here, the trial court fails not only to articulate its rationale, but also fails to disclose which of the seven class action prerequisites it found to be lacking with respect to the various alleged claims for relief. Accordingly, we suggest that in determining the propriety of class certification under Civ.R. 23, trial courts make separate written findings as to each of the seven class action requirements, and specify their reasoning as to each finding.

II

PREREQUISITES TO A CLASS ACTION

**{¶ 15}** The following seven requirements must be satisfied before an action may be maintained as a class action under Civ.R. 23: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met. Civ.R. 23(A) and (B); *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091.

III

APPLICATION OF CLASS ACTION REQUIREMENTS: CIV.R. 23(A)

A

Identifiable Class

{¶ 16} "[T]he requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2 Ed.1986) 120-121, Section 1760. Thus, the class definition must be precise enough "to permit identification within a reasonable effort." *Warner, supra*, 36 Ohio St.3d at 96, 521 N.E.2d at 1096.

{¶ 17} The trial court has not described the class or classes to which it denied certification. However, it is reasonably clear from the record that appellants seek to represent all Ohio Savings mortgagors on whose residential loans Ohio Savings calculated interest according to the 365/360 method.

{¶ 18} In their motion for class certification, appellants proposed that the class be divided into two subclasses, but the parties agree that four subclasses were actually presented to the trial court for certification. We glean from appellants' motion that the following subclasses were proposed for certification:

(1) All borrowers whose loans have been retired, where interest was calculated under the 365/360 method but the monthly payment amount was established under the 360/360 method.

(2) All borrowers whose loans are outstanding, where interest is being calculated under the 365/360 method but the monthly payment amount was established under the 360/360 method.

(3) All borrowers whose loans have been retired, where the 365/360 method was used to calculate interest and to establish the monthly payment amount.

(4) All borrowers whose loans are outstanding, where the 365/360 method is being used to calculate interest and to establish the monthly payment amount.

**{¶ 19}** Ohio Savings contends that the proposed class description is indefinite because individual inquiry into each prospective member's knowledge or understanding of the 365/360 method would be required in order to ascertain his or her membership in the class. In support, Ohio Savings relies on *Bernard v. First Natl. Bank of Oregon* (1976), 275 Ore. 145, 156-157, 550 P.2d 1203, 1210-1211, and *Wilcox Dev. Co. v. First Interstate Bank of Oregon, N.A.* (D.Ore.1983), 97 F.R.D. 440, 445. Upon review, we determine that Ohio Savings' reliance on these cases is misplaced.

**{¶ 20}** In *Bernard*, various plaintiffs brought an action on behalf of themselves and others similarly situated against two banks with whom they had entered into loan agreements. The banks apparently amortized the loans under the 365/360 method, but the notes that plaintiffs executed failed to disclose that fact. Plaintiffs alleged that they and members of the class had no knowledge that the banks computed interest on the basis of the 365/360 method.

**{¶ 21}** In determining that the plaintiffs failed to satisfy the *predominance* requirement, the court in *Bernard* found it likely that final determination of the action would require separate adjudications as to the knowledge of numerous commercial borrowers regarding the 365/360 practice. *Id.* at 162, 550 P.2d at 1214. While this finding will be analyzed more fully when we consider Civ.R. 23(B)(3)'s predominance requirement, we note here that this finding did not form the basis for the court's conclusion that the class was insufficiently defined.

**{¶ 22}** Instead, in an effort to demonstrate that inquiries into individual knowledge would not be necessary to finally determine the action, the plaintiffs in *Bernard* argued that they had *defined the class to include only those borrowers who had no knowledge of the banks' practice. Id.* at 156, 550 P.2d at 1210. Responding to this argument, the court explained that "any class, the definition of which depends on the 'state of mind' of the prospective members, would be difficult to sustain, [and] the class, where possible, should be defined upon the basis of the

manner in which the defendant acted toward an ascertainable group of persons." (Citations omitted.) *Id.*, 275 Ore. at 156-157, 550 P.2d at 1211. See, also, 5 Moore's Federal Practice, *supra*, at 23-59 to 23-60, Sections 23.21[4][a] and [b].

{¶ 23} In relying on *Bernard*, Ohio Savings confuses that court's analysis of the predominance requirement with its analysis of the requirement for an identifiable class. As a result, Ohio Savings arrives at a conclusion that the court in *Bernard* did not, and could not, reach — that even when a class is appropriately defined by reference to defendant's conduct, it is nevertheless indefinite if separate adjudications are likely required to finally determine the action. The focus at this stage is on how the class is defined. "The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class." *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 63, 556 N.E.2d 157, 165. The question as to whether there are differing factual and legal issues "do[es] not enter into the analysis until the court begins to consider the Civ.R. 23(B)(3) requirement of predominance and superiority." *Marks, supra*, 31 Ohio St.3d at 202, 31 OBR at 400, 509 N.E.2d at 1253.

{¶ 24} Although *Wilcox*, 97 F.R.D. 440, appears to support Ohio Savings' position, it has been found "[a]gainst the weight of authority" and "clearly to be wrong." *Kleiner v. First Natl. Bank of Atlanta* (N.D.Ga.1983), 97 F.R.D. 683, 692, 694. In any event, *Wilcox* involved an undefined contractual term. However, in the present case, as in *Kleiner*, "[n]either side has asserted that the interest rate provisions of the notes are ambiguous." *Kleiner*, 97 F.R.D. at 693.

{¶ 25} In the present case, the court need only look to the actions or practices of Ohio Savings to determine whether an individual is a member of any of the respective subclasses. See 5 Moore's Federal Practice, *supra*, at 23-59, Section 23.21[4][a]. In fact, in October 1985, Ohio Savings readily identified and notified two thousand seven hundred of its borrowers that their loans would not

fully amortize within the intended term. It is difficult to accept that individual knowledge inquiries are required to determine class membership in this case, when Ohio Savings was able to ascertain, with a reasonable effort, two thousand seven hundred prospective class members without inquiring as to their knowledge or understanding of the terms of their agreements.

**{¶ 26}** While the trial court may not have based its decision on the absence of an identifiable class, such a finding, if made, would constitute an abuse of discretion.

B

Class Membership

**{¶ 27}** Ohio Savings had advanced no separate argument in the trial court that appellants failed to satisfy the prerequisite that they must be members of the class. It is doubtful, therefore, that the trial court found this element lacking in denying class certification.

**{¶ 28}** However, in its statement of the facts to this court, Ohio Savings asserts: "Frances Hamilton represented Subclass 1. George and Barbara Seidel represented Subclass 2. There were no representatives of Subclasses 3 or 4." We disagree.

**{¶ 29}** The class membership prerequisite requires only that "the representative have proper standing. In order to have standing to sue as a class representative, the plaintiff must possess the same interest and suffer the same injury shared by all members of the class that he or she seeks to represent." 5 Moore's Federal Practice, *supra*, at 23-57, Section 23.21[1]. See, also, 7A Wright, Miller & Kane, *supra*, at 137-141, 149-150, Section 1761. Accordingly, when we found the record in *Warner* to be "devoid of any evidence indicating the representatives are members of the class seeking injunctive relief," *id.*, 36 Ohio St.3d at 97, 521 N.E.2d at 1096, we instructed the trial court, on remand, to

determine "whether the representatives *have an action* for such injunctive relief before such claims may be pursued." (Emphasis added.) *Id.*

{¶ 30} In the case *sub judice*, appellants challenge the application of the 365/360 method as increasing their stated interest rate. Hamilton's loan is retired, and she seeks damages resulting from what she claims was an overcharge of interest. The Seidel loan is outstanding, and the Seidels seek injunctive relief to prevent further overcharges of interest. This is the same interest and the same injury shared by all members of subclasses three and four. The fact that appellants present additional claims for failure of their loans to amortize within its intended term does not preclude their representation of these subclasses. See *Am. Timber & Trading Co. v. First Natl. Bank of Oregon* (C.A.9, 1982), 690 F.2d 781, 786-787; *Noren v. Straw* (D.Mont.1982), 578 F.Supp. 1, 3.

{¶ 31} Accordingly, appellants have proper standing to sue as representatives of subclasses three and four, and the class membership requirement is satisfied.

C

Impracticality or Numerosity

{¶ 32} Civ.R. 23(A) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable * * *."

{¶ 33} In this action, there are at least two thousand seven hundred possible class members. This number alone is sufficient to establish that the class is so numerous that joinder of all members is impracticable. *Warner, supra*, 36 Ohio St.3d at 97, 521 N.E.2d at 1097; 5 Moore's Federal Practice, *supra*, 23-63 to 23-66, Section 23.22[3][a].

{¶ 34} Ohio Savings argues that not one of the two thousand seven hundred borrowers to whom it sent letters chose to file a lawsuit or to join this action. According to Ohio Savings, such "class apathy * * * supports assessing numerosity based on actual filings, instead of potential class members."

{¶ 35} However, the letters sent by Ohio Savings failed to inform its customers that an action had been commenced on their behalf, let alone the allegations made. To the contrary, it informed these borrowers that they had been benefiting from an underpayment, and gave them an option of increasing the monthly payment or extending the contractual term. We cannot accept that these borrowers remained apathetic to class participation in the face of a letter that not only failed to inform them of a class action, but, to the contrary, implied that they had retained funds to the detriment of Ohio Savings.

{¶ 36} Moreover, the lack of parallel individual actions is not a bar to a finding of impracticability. To the contrary:

"Joinder is more likely to be impracticable if the class members can be assumed to lack the ability or the motivation to institute individual actions. For example, if [a] class member's individual claims involve only a small amount of damages, class members would be unlikely to file separate actions. Courts have

concluded their joinder is impracticable in such circumstances." 5 Moore's Federal Practice, *supra*, at 23-71, Section 23.22[5].

**{¶ 37}** Also, the lack of class member intervention, when considered in the context of Civ.R. 23(A)(4), has been found irrelevant to the plaintiff's adequacy to represent a class:

"Though intervention was important under original Rule 23, the lack of intervention by class members has been held irrelevant under the amended rule.

"Not only is the lack of interventions usually deemed irrelevant in consideration of the plaintiff's adequacy to represent a class, but the corollary is also true. It is settled that absent class members are passive parties to a class suit and may, but need not, intervene to protect their interests therein." 1 Newberg on Class Actions (3 Ed.1992) 3-148 to 3-149, Section 3.28. See, also, 7A Wright, Miller & Kane, *supra*, at 361-362, Section 1768.

**{¶ 38}** Accordingly, a denial of class certification in this case cannot be based on a finding of practicability of joinder.

D

Unilateral Communications

**{¶ 39}** Approximately one thousand four hundred borrowers responded to Ohio Savings' letter to increase their monthly payment or extend the term of their loan. Appellants propose that after the commencement of a class action, the defendant is not permitted to engage in unilateral and unsupervised communications with potential members of the class concerning the substance of the class action, and that any potential class member who relinquishes his or her right to participate in the class in response to such communications should not be excluded from the class. We agree.

**{¶ 40}** As aptly explained in *Kleiner v. First Natl. Bank of Atlanta* (C.A.11, 1985), 751 F.2d 1193, 1202-1203:

"When confronted with claims pressed by a plaintiff class, it is obviously in defendant's interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests. Such conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule.

"A unilateral communications scheme, moreover, is rife with potential for coercion. '[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.' Note, Developments in the Law — Class Actions, 89 Harv.L.Rev. 1318, 1600. * * *

" * * *

"Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal. The damage from misstatements could well be irreparable.

"Concomitantly, a solicitations scheme relegates the essential supervision of the court to the status of an 'afterthought.' * * * The Bank's subterfuge and subversion constituted an intolerable affront to the authority of the district court to police class member contacts." (Citations and footnotes omitted.)

{¶ 41} Those borrowers who made an election in response to Ohio Savings' letter "must be restored to the class and must be sent a special notice setting forth [the court's] finding of impropriety on [defendant's] part." *Impervious Paint Industries, Inc. v. Ashland Oil* (W.D.Ky.1981), 508 F.Supp. 720, 724. See, also, 5 Moore's Federal Practice, *supra*, at 23-200 to 23-202 and 23-204, Sections 23.43[6] and 23.45[2].

E

Commonality

**{¶ 42}** Civ.R. 23(A)(2) requires the presence of "questions of law or fact common to the class." Courts generally give this requirement a permissive application. It is not necessary that all the questions of law or fact raised in the dispute be common to all the parties. If there is a common nucleus of operative facts, or a common liability issue, the rule is satisfied. *Marks, supra,* 31 Ohio St.3d at 202, 31 OBR at 399-400, 509 N.E.2d at 1252-1253; *Warner, supra*, 36 Ohio St.3d 91, 521 N.E.2d 1091, paragraph three of the syllabus. The issue of whether there are any additional questions affecting only individual class members does not enter the class certification analysis until the Civ.R. 23(B)(3) requirement of predominance and superiority is applied. *Marks, supra*, 31 Ohio St.3d at 202, 31 OBR at 400, 509 N.E.2d at 1253.

**{¶ 43}** Here, each of the four subclasses presents the common legal claim of breach of contract stemming from the common fact of the application of the 365/360 method to calculate the interest rates on their loans. In addition to these common issues, subclasses one and two present common legal claims for breach of contract, fraud, conversion, waiver and estoppel, and unjust enrichment, as well as a statutory claim for violations of the federal Truth in Lending Act, Section 1601 *et seq.*, Title 15, U.S.Code. These common claims stem from the common fact that the monthly payment amount on their 365/360 loans was established under the 360/360 method, resulting in the failure of their loans to fully amortize within its intended term.

**{¶ 44}** Accordingly, it must be concluded that this prerequisite is satisfied with respect to each subclass.

F

Typicality and Adequate Representation

**{¶ 45}** The requirement for typicality is met where there is no express conflict between the class representatives and the class. Similarly, a representative is deemed adequate so long as his or her interest is not antagonistic to that of other class members. *Warner, supra*, 36 Ohio St.3d at 98, 521 N.E.2d at 1097; *Marks, supra*, 31 Ohio St.3d at 202-203, 31 OBR at 400, 509 N.E.2d at 1253. Since Ohio Savings has merged its arguments with respect to these two prerequisites, we will consider them together. In so doing, however, we remain mindful that these are distinct requirements. See *Falcon, supra*, 457 U.S. at 157-158, 102 S.Ct. at 2370-2371, 72 L.Ed.2d at 750, fn. 13; 5 Moore's Federal Practice, *supra*, at 23-94.2, Section 23.24[3].

**{¶ 46}** Ohio Savings argues that a conflict exists between borrowers with "understated" monthly payments (classes one and two) and borrowers with "properly stated" monthly payments (classes three and four). However, each class seeks to establish that the method of computation and the exaction of additional charges produced an interest rate in excess of the rate set forth in their notes, and thus there is no conflict or antagonism between appellants and the other class members. See *Cohen v. Dist. of Columbia Natl. Bank* (D.D.C.1972), 59 F.R.D. 84, 89.

**{¶ 47}** Ohio Savings further argues, without supporting authority, that "[d]efenses unique to Hamilton and the Seidels also made them inadequate representatives for absent class members." It asserts that when Hamilton's note was retired, she "signed a new agreement that ratified [her] principal balance," and that both Hamilton and the Seidels "testified in deposition that they did not 'credit shop' for lower rates before deciding to go with Ohio Savings. * * * They would therefore be unable to prove reliance on the numerical rate in the contract."

**{¶ 48}** These same arguments were found to be without merit in *Michaels Bldg. Co. v. Ameritrust Co., N.A.* (C.A.6, 1988), 848 F.2d 674, 679, fn. 8. Moreover, a  unique defense will not destroy typicality or adequacy of representation unless it is "so central to the litigation that it threatens to preoccupy the class representative to the detriment of the other class members."  5 Moore's Federal Practice, *supra*, at 23-126, Section 23.25[4][b][iv], and at 23-98, Section 23.24[6].  Neither of Ohio Savings' defenses is of this caliber.  See *Cobb v. Monarch Finance Corp.* (N.D.Ill.1995), 913 F.Supp. 1164, 1171-1172; *Heartland Communications, Inc. v. Sprint Corp.* (D.Kan.1995), 161 F.R.D. 111, 116; *Hickey v. Great W. Mtge. Corp.* (N.D.Ill.1994), 158 F.R.D. 603, 609-610; *Ingram v. Joe Conrad Chevrolet, Inc.* (E.D.Ky.1981), 90 F.R.D. 129, 131.

**{¶ 49}** Last, Ohio Savings argues that "neither Hamilton nor the Seidels had the financial wherewithal necessary to pursue their class claims and protect absent class members."  Although Ohio Savings offers no authority in support, our research discloses that there is substantial disagreement among the courts over whether, and to what extent, the class representatives' finances are relevant to determining adequacy of representation.  See, generally, 1 Newberg on Class Actions, *supra*, Section 3.37; 5 Moore's Federal Practice, *supra*, Section 23.25[4][d].

**{¶ 50}** However, we need not decide this broad issue under the circumstances of this case.  Appellants and their counsel have found the means to prosecute this case for over thirteen years, and have proven their ability to engage in and withstand substantial discovery, as well as to pursue appeals on three separate occasions.  *Hamilton v. Ohio Sav. Assn.* (Mar. 29, 1990), Cuyahoga App. No. 56820, unreported, 1990 WL 37342; *Hamilton v. Ohio Sav. Bank* (Sept. 17, 1992), Cuyahoga App. No. 61908, unreported, 1992 WL 227894; *Hamilton v. Ohio Sav. Bank* (Oct. 3, 1996), Cuyahoga App. No. 69757, unreported, 1996 WL 563665. Under these circumstances, there is no basis for inquiry into appellants' personal

finances. See, *e.g.*, *Horton v. Goose Creek Indep. School Dist.* (C.A.5, 1982), 690 F.2d 470, 485, fn. 26; *In re Workers' Comp.* (D.Minn.1990), 130 F.R.D. 99, 107-108; *Harris v. Gen. Dev. Corp.* (N.D.Ill.1989), 127 F.R.D. 655, 663; *Ingram, supra*, 90 F.R.D. at 132.

**{¶ 51}** Accordingly it must be concluded that appellants' claims are typical of the claims of the class, and that appellants are adequate class representatives.

IV

APPLICATION OF CLASS ACTION REQUIREMENTS:  CIV.R. 23(B)

A

Application of Civ.R. 23(B)(3)

**{¶ 52}** "The Rule 23(B)(3) action is the so-called 'damage' action." *Warner, supra*, 36 Ohio St.3d at 95-96, 521 N.E.2d at 1095.  It adds "to the complex-litigation arsenal class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded." *Amchem Prods., Inc. v. Windsor* (1997), 521 U.S. ___, ___, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689, 707.  The court of appeals correctly determined that "[b]y virtue of the applicability of section (B)(3) to classes involving claims for damages, * * * this section of the rule applies to those subclasses herein (subclasses 1 and 3) which have retired mortgage loans."

**{¶ 53}** Civ.R. 23(B)(3) provides that an action may be maintained as a class action if, in addition to the prerequisites of subdivision (A), "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:  (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability

of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action."

{¶ 54} The purpose of Civ.R. 23(B)(3) was to bring within the fold of maintainable class actions cases in which the efficiency and economy of common adjudication outweigh the interests of individual autonomy. *Warner, supra*, 36 Ohio St.3d at 96, 521 N.E.2d at 1096; *Marks, supra*, 31 Ohio St.3d at 204, 31 OBR at 401-402, 509 N.E.2d at 1254; *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 314, 15 OBR 439, 442, 473 N.E.2d 822, 825; 7A Wright, Miller & Kane, *supra*, at 517-519, Section 1777; 5 Moore's Federal Practice, *supra*, at 23-203, Section 23.44; 1966 Advisory Committee Note to Fed.R.Civ.P. 23(b)(3). Thus, "[t]his portion of the rule also was expected to be particularly helpful in enabling numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights." 7A Wright, Miller & Kane, *supra*, at 518, Section 1777.

{¶ 55} As the high court recently explained:

" 'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.' " *Amchem, supra*, 521 U.S. at ___, 117 S.Ct. at 2246, 138 L.Ed.2d at 709, quoting *Mace v. Van Ru Credit Corp.* (C.A.7, 1997), 109 F.3d 338, 344.

{¶ 56} In this case, the questions of law and fact which have already been shown to be common to each respective subclass arise from identical or similar form contracts. The gravamen of every complaint within each subclass is the same and relates to the use of standardized procedures and practices. No individual has attempted to institute a parallel action or to intervene in this action, and it is unlikely that any new suits will be filed given the relatively small individual recoveries and

the massive duplication of time, effort, and expense that would be involved. While the class is numerically substantial, it is certainly not so large as to be unwieldy. Class action treatment would eliminate any potential danger of varying or inconsistent judgments, while providing a forum for the vindication of rights of groups of people who individually would be without effective strength to litigate their claims. This appears to present the classic case for treatment as a class action, and cases involving similar claims or similar circumstances are routinely certified as such. *Am. Timber & Trading Co., supra*, 690 F.2d 781; *Goldman v. First Natl. Bank of Chicago* (C.A.7, 1976), 532 F.2d 10; *Cobb, supra,* 913 F.Supp. 1164; *Hickey, supra*, 158 F.R.D. 603; *Mayo v. Sears, Roebuck & Co.* (S.D.Ohio 1993), 148 F.R.D. 576; *Kleiner, supra,* 97 F.R.D. 683; *Hughes v. Cardinal Fed. S. & L. Assn.* (S.D.Ohio 1983), 97 F.R.D. 653; *Ingram, supra,* 90 F.R.D. 129; *Kaminski v. Shawmut Credit Union* (D.Mass.1976), 416 F.Supp. 1119; *Perlman v. First Natl. Bank of Chicago* (1973), 15 Ill.App.3d 784, 305 N.E.2d 236; *Landau v. Chase Manhattan Bank, N.A.* (S.D.N.Y.1973), 367 F.Supp. 992; *Partain v. First Natl. Bank of Montgomery* (M.D.Ala.1973), 59 F.R.D. 56; *Cohen, supra,* 59 F.R.D. 84*; Eovaldi v. First Natl. Bank of Chicago* (N.D.Ill.1972), 57 F.R.D. 545; *Goebel v. First Fed. S. & L. Assn. of Racine* (1978), 83 Wis.2d 668, 266 N.W.2d 352; *Vickers v. Home Fed. S. & L. Assn. of E. Rochester* (1976), 87 Misc.2d 880, 386 N.Y.S.2d 291, affirmed (1977), 56 A.D.2d 62, 390 N.Y.S.2d 747; *Silverstein v. Shadow Lawn S. & L. Assn.* (1968), 51 N.J. 30, 237 A.2d 474; 5 Moore's Federal Practice, *supra*, at 23-251, Section 23.47[5].

**{¶ 57}** However, Ohio Savings advances several arguments that it feels would have justified a determination by the trial court that the elements of predominance and superiority are lacking in this case. Many of these arguments repeat those already addressed within the context of Civ.R. 23(A), and will be considered only to the extent that they have special significance to the requirements of Civ.R. 23(B)(3).

{¶ 58} First, Ohio Savings asserts that "the fact that only two borrowers had come forth in 12 years indicated that traditional [litigation]—not class litigation—was the superior method for these claims." Civ.R. 23(B)(3)(b) directs the court to consider the "extent and nature of any litigation concerning the controversy already commenced by or against members of the class." However, Ohio Savings' argument turns this factor on its head. The *presence* of parallel, individual actions tends to weigh *against* class certification, while the *lack* of parallel lawsuits tends to weigh in *favor* of certification. *Ingram, supra*, 90 F.R.D. at 133; 7A Wright, Miller & Kane, *supra*, at 568-571, Section 1780. Were it otherwise, it would be next to impossible to certify a class, since the impracticability requirement of Civ.R. 23(A)(1) and the superiority requirement of Civ.R. 23(B)(3) could not be satisfied simultaneously.

{¶ 59} Second, Ohio Savings argues that "[a] record of differing damages also supported the Trial Court's sound discretion in denying class certification." However, we have specifically held, in accordance with the overwhelming weight of authority, that "a trial court should not dispose of a class certification solely on the basis of disparate damages." *Ojalvo, supra*, 12 Ohio St.3d at 232, 12 OBR at 314, 466 N.E.2d at 876-877. This is not to say that certification may never be denied on the basis of individual damage issues. Some courts have denied certification where the calculation of damages is particularly complex or burdensome. However, such is not the case where, as here, damages may be calculated by a mathematical formula. 5 Moore's Federal Practice, *supra*, at 23-209 to 23-210, Section 23.46[2][b].

{¶ 60} Thus, as the court in *Partain, supra*, 59 F.R.D. at 59, explained:

"In this case, * * * no separate trials will be required on the issue of damages. Damages can be mathematically calculated on the basis of the information presently contained in the bank's records. With the aid of a computer, the exact amount due each member of the class can be quickly and accurately

determined without the need to further burden the Court with the presentation of evidence in each individual case." (Footnotes omitted.)

{¶ 61} Third, relying heavily on *Bernard, supra*, 275 Ore. 145, 550 P.2d 1203, Ohio Savings argues that class denial is appropriate because the breach of contract claim presented by the entire class "would require an inquiry into each borrower's understanding of the terms of his or her loan." Upon review, we determine that *Bernard* is not appropriate authority for denying class certification in this case.

{¶ 62} Oregon's statutory version of Civ.R. 23(B)(3), Ore.Rev.Stat. 13.220(2)(c), contains limiting language that was found to be determinative in *Bernard* and that does not appear in either Civ.R. 23(B)(3) or Fed.R.Civ.P. 23(b)(3). Based on this language, the court in *Bernard* found that "the scope of the class action in Oregon was intended to be circumscribed to a greater extent than is the case under some federal courts' interpretation of Rule 23." *Id.*, 275 Ore. at 152, 550 P.2d at 1208. However, "[s]ince the Ohio rule is identical to Fed.R.Civ.P. 23, with the exception of Civ.R. 23(F) which is not involved in the discussion here, federal authority is an appropriate aid to interpretation of the Ohio rule." *Marks, supra*, 31 Ohio St.3d at 201, 31 OBR at 398, 509 N.E.2d at 1251-1252.

{¶ 63} In addition, the class sought to be certified in *Bernard* included numerous *commercial* borrowers, and it was with respect to these commercial borrowers that the court found individual inquiries into knowledge necessary. *Id.*, 275 Ore. at 161-162, 550 P.2d at 1213-1214. However, after *Bernard*, the Oregon Supreme Court decided *Derenco, Inc. v. Benjamin Franklin Fed. S. & L. Assn.* (1978), 281 Ore. 533, 577 P.2d 477, in which it affirmed certification of a class of *residential* borrowers who challenged the defendant's investment of funds deposited for the payment of taxes and insurance premiums on their homes. In so doing, the court distinguished *Bernard* on the basis that "[t]he class in the instant

case is made up of homeowners, whereas *Bernard* dealt with a class of 'commercial' loan borrowers," and explained:

"We have a uniform class of borrowers who were submitted an identical (insofar as material here) adhesion contract under strictly regimented procedures. The only unknown factor is the knowledge of each borrower concerning the use of the deposits by defendant for its own purposes. It is our conclusion that the proof here indicates that it is 'unlikely' that 'numerous' members of the class possessed such knowledge or that the subject of the beneficial interest in the funds even occurred to them. It is therefore proper that this proceeding continue as a class action. In answer to the possible argument that no claims arising out of separate contractual situations are proper for class action treatment, we acknowledge that there is no doubt they present special problems. However, had it been the intention of the legislature to exclude contractual situations from class action relief, we believe it would have said so." *Id.*, 281 Ore. at 572-573, 577 P.2d at 499.

{¶ 64} It would appear, therefore, that even within the stricture of the Oregon statute, Oregon's high court would have ruled differently in *Bernard* had the class been made up entirely of residential borrowers.

{¶ 65} Next, relying in part on our decision in *Schmidt, supra*, 15 Ohio St.3d 310, 15 OBR 439, 473 N.E.2d 822, Ohio Savings argues that class certification is properly denied where elements of inducement and reliance must be proven on an individual basis. Thus, Ohio Savings concludes, the trial court properly rejected class action treatment of appellants' claims for fraud, waiver, estoppel, and unjust enrichment.

{¶ 66} In *Schmidt*, plaintiffs claimed in part that they were entitled to compensation from their former employer pursuant to a written separation pay policy. In affirming the denial of certification, we agreed with the court of appeals that "[i]f this claim is viewed as raising the doctrine of promissory estoppel, * * * then the circumstances of each individual employee would need to be analyzed and

the elements of inducement and reliance would have to be proven with respect to each individual member of the proposed class." *Id.*, 15 Ohio St.3d at 314, 15 OBR at 443, 473 N.E.2d at 825.

**{¶ 67}** However, *Schmidt* did not purport to establish a rule that any claim containing a necessary element of reliance is *ipso facto* excluded from class action treatment. The drafters of Civ.R. 23 could easily have expressed such an exclusion had that been their intent. Instead, the elements of inducement and reliance defeated class certification in *Schmidt* "because the claims raised involve[d] *noncommon issues* that are either inextricably entangled with common issues or are too unwieldy to be handled adequately on a class action basis." (Emphasis added.) *Id.,* 15 Ohio St.3d at 314, 15 OBR at 442, 473 N.E.2d at 825.

**{¶ 68}** As explained in the 1966 Advisory Committee Notes to Fed.R.Civ.P. 23(b)(3):

"[A] fraud perpetrated on numerous persons by the use of *similar misrepresentations* may be an appealing situation for a class action. * * * On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was *material variation in the representation made or in the kinds or degrees of reliance* by the persons to whom they were addressed." (Emphasis added.)

**{¶ 69}** Thus, class action treatment is appropriate where the claims arise from standardized forms or routinized procedures, notwithstanding the need to prove reliance. See, *e.g.*, *Portman v. Akron S. & L. Co.* (1975), 47 Ohio App.2d 216, 1 O.O.3d 287, 353 N.E.2d 634; *Hickey, supra*, 158 F.R.D. at 609-610; *Mayo, supra*, 148 F.R.D. at 583.

**{¶ 70}** Moreover, the situation here is markedly different from that in *Schmidt*. Unlike in *Schmidt,* proof of reliance will not require separate examination of each prospective class member. Instead, proof of reliance in this case may be sufficiently established by inference or presumption. See *Vasquez v. Superior*

*Court of San Joaquin Cty.* (1971), 4 Cal.3d 800, 814-815, 94 Cal.Rptr. 796, 804-805, 484 P.2d 964, 972-973. As explained by the Sixth Circuit in *Michaels Bldg. Co., supra*, 848 F.2d at 679, fn. 8, "since plaintiffs knew that defendants' loan statements offered a certain prime rate (which allegedly misstated the true prime rate), this information, it must be inferred, influenced plaintiffs' decision to borrow money from those defendant banks."

**{¶ 71}** Last, Ohio Savings argues, and the court of appeals agreed, that the trial court did not abuse its discretion in denying certification to "a class consisting of members who must rely upon equitable tolling to overcome a statute of limitations." According to Ohio Savings, "[t]he complexity and pervasiveness of the timeliness problem dominated the [Truth in Lending] claims and wholly justified the Trial Court's discretionary denial of class certification." We disagree.

**{¶ 72}** "That a statute of limitations may bar the claims of some, but not all, class members does not compel a finding that individual issues predominate over common ones. * * * Rather, as long as there is a sufficient nucleus of common issues, differences in the application of a statute of limitations to individual class members will not preclude certification under Rule 23(b)(3)." 5 Moore's Federal Practice, *supra*, at 23-210 to 23-211, Section 23.46[3].

**{¶ 73}** In *Bowen v. City of New York* (1986), 476 U.S. 467, 481-482, 106 S.Ct. 2022, 2031, 90 L.Ed.2d 462, 476, the high court held that "[equitable] [t]olling of the 60-day limitations period [under Section 405(g), Title 42, U.S.Code] was appropriate in this case, and the District Court properly included in the class claimants * * * who did not seek judicial review within the statutory 60-day time period."

**{¶ 74}** Although Ohio Savings cites several cases to support its position, only *Chevalier v. Baird Sav. Assn.* (E.D.Pa.1976), 72 F.R.D. 140, is apposite to the issue of equitable tolling. In *Chevalier*, plaintiffs sought to represent a class that included mortgagors whose loan transactions had been consummated more than

one year before the first complaint was filed. The court explained that since "the statute of limitations for [Truth in Lending] actions is one year, 15 U.S.C. §1640(e), plaintiffs * * * will have to establish that the statute was tolled because of fraudulent concealment." *Id.* at 153. The court concluded that "[w]hile it is a close question, we think that these individual inquiries preclude a conclusion that common questions predominate." *Id.* at 153-154.

{¶ 75} *Chevalier* is revealing not for its conclusion, but for what the court was compelled to do in order to reach it. The court relied on two obscure cases which, without supporting authority, found that statute of limitations issues predominated over common issues in securities fraud actions. *Id.*, 72 F.R.D. at 154. However, the near unanimous weight of authority is to the contrary. *Hoxworth v. Blinder, Robinson & Co., Inc.* (C.A.3, 1992), 980 F.2d 912, 924; *Gunter v. Ridgewood Energy Corp.* (D.N.J.1996), 164 F.R.D. 391, 398-399; *In re Revco Securities Litigation* (N.D.Ohio 1992), 142 F.R.D. 659, 663-664; *In re Wirebound Boxes Antitrust Litigation* (D.Minn.1989), 128 F.R.D. 268, 272; *In re Energy Systems Equip. Leasing Securities Litigation* (E.D.N.Y.1986), 642 F.Supp. 718, 752-753; *Fisher Bros. v. Mueller Brass Co.* (E.D.Pa.1984), 102 F.R.D. 570, 579; *United Natl. Records, Inc. v. MCA, Inc.* (N.D.Ill.1983), 99 F.R.D. 178, 181-182; *Cohen, supra*, 59 F.R.D. at 90.

{¶ 76} It is conceivable that a significant amount of time may be spent in this case litigating questions affecting only individual members of the classes. However, clockwatching is neither helpful nor desirable in determining the propriety of class certification. 7A Wright, Miller & Kane, *supra*, at 527, Section 1778. A court should not "determine predominance by comparing the time that the common issues can be anticipated to consume in the litigation to the time that individual issues will require. Otherwise, only the most complex common questions could predominate since such issues tend to require more time to litigate

26

than less complex issues." 5 Moore's Federal Practice, *supra*, at 23-207 to 23-208, Section 23.46[1].

{¶ 77} As one court has so astutely explained:

"[A]rguably it is true that as a class action more time *in toto* will be spent in proof of individual damage claims in any of the class actions than will be spent in proof of conspiracy. * * * [However,] if there were to be but a single case for trial, the court would expect that the great bulk of the time of that trial would be consumed with proof or the attempted proof of the existence and effect of a conspiracy and that the fraudulent concealment and damage issues would be far less predominant in the sense of time consumed at the trial. Were there to be 500 separate suits, this same pattern undoubtedly would prevail as to each. It seems specious and begging the question to say that if these 500 law suits were brought into a class so that proof on the issues of conspiracy need be adduced only once and the result then becomes binding on all 500, * * * thereby the common issue of conspiracy no longer predominates because from a total time standpoint, cumulatively individual damage proof will take longer." *Minnesota v. U.S. Steel Corp.* (D.Minn.1968), 44 F.R.D. 559, 569.

{¶ 78} Ohio Savings has not advanced, and we cannot find, any sound reason for denying certification to these subclasses under Civ.R. 23(B)(3). For the reasons stated, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Each subclass shares a common nucleus of operative facts and asserts the same theories of liability. The substantive elements of the class members' claims require the same proof for each class member. The class is clearly bound together by a mutual interest in resolving common questions to a far greater extent than it may be divided by individual interests. None of the questions affecting only individual members rises to the level necessary to defeat class certification. It must also be concluded, therefore, that the common questions represent a significant aspect of the case, and predominate over

questions affecting only individual members of the class. See *Marks, supra*, 31 Ohio St.3d at 204, 31 OBR at 401, 509 N.E.2d at 1251.

{¶ 79} Accordingly, we find that the trial court abused its discretion in denying certification to these subclasses, and the judgment of the court of appeals is reversed as to this issue.

B

Application of Civ.R. 23(B)(2)

{¶ 80} Civ.R. 23(B)(2) makes provision for class actions where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

{¶ 81} The court of appeals found that subclasses two and four (those borrowers with outstanding loans) sought primarily injunctive relief and should have been certified under Civ.R. 23(B)(2).

{¶ 82} Ohio Savings advances a single proposition with regard to these subclasses: "A trial court does not abuse its discretion when it declines to certify an action that seeks predominately money damages under Civ.R. 23(B)(2)."

{¶ 83} We agree with this proposition. *Warner, supra*, 36 Ohio St.3d at 95, 521 N.E.2d at 1095 ("Civ.R. 23[B][2] has, as its primary application, a suit seeking injunctive relief."); *Marks, supra*, 31 Ohio St.3d at 203, 31 OBR at 401, 509 N.E.2d at 1254 ("this provision is inapplicable where the primary relief requested is damages"). However, we disagree that subclasses two and four seek primarily money damages. Their primary object is to terminate Ohio Savings' alleged practice of overcharging interest and/or misamortizing its loans. Without such relief, they would achieve only the recoupment of overpaid interest to date. The fact that money damages are also sought in addition to injunctive relief does not defeat certification under Civ.R. 23(B)(2). See 5 Moore's Federal Practice, *supra*, at 23-196 to 23-197, Section 23.43[3][a].

**{¶ 84}** As aptly explained in 7A Wright, Miller & Kane, *supra*, at 470, Section 1775:

"Disputes over whether the action is primarily for injunctive or declaratory relief rather than a monetary award neither promote the disposition of the case on the merits nor represent a useful expenditure of energy. Therefore, they should be avoided. If the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2). Those aspects of the case not falling within Rule 23(b)(2) should be treated as incidental. Indeed, quite commonly they will fall within Rule 23(b)(1) or Rule 23(b)(3) and may be heard on a class basis under one of those subdivisions. Even when this is not the case, the action should not be dismissed. The court has the power under subdivision (c)(4)(A), which permits an action to be brought under Rule 23 'with respect to particular issues,' to confine the class action aspects of a case to those issues pertaining to the injunction and to allow damage issues to be tried separately."

**{¶ 85}** Accordingly, the trial court's denial of certification to subclasses two and four constituted an abuse of discretion, and the judgment of the court of appeals is affirmed as to this issue.

V

CONCLUSION

**{¶ 86}** In summary, we hold that this cause shall proceed as a class action, that the entire class be certified with respect to all claims, and that those class members who responded to Ohio Savings' letter to increase their monthly payments or extend the term of their loans be included in the class.

**{¶ 87}** In light of all the foregoing, the judgment of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed in part,*

*reversed in part*

*and cause remanded.*

MOYER, C.J., DOUGLAS, VUKOVICH, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

JOSEPH J. VUKOVICH, J., of the Seventh Appellate District, sitting for F.E. SWEENEY, J.

_____