JOURNAL ENTRY and OPINION
{¶ 1} Defendants-appellants Anthony Nunes, JK Harris Co., LLC, JK Harris Advisors, LLC, JK Harris, Inc. and Professional Fee Financing Associates, LLC appeal the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby reverse and remand to the lower court.
 {¶ 2} JK Harris is a nationwide tax representation firm. On January 29, 2002, plaintiff-appellee Charles Repede ("Repede") contracted with JK Harris for tax-related services. On January 23, 2004, Repede sued JK Harris and related defendants (collectively referred to as "JK Harris") in a purported class action, asserting a claim for breach of contract, a claim under the Ohio Consumer Sales Practices Act (R.C. Chapter 1345), as well as a claim for deceptive conduct. On March 8, 2004, JK Harris filed an answer and counterclaim and, on March 12, 2004, filed an amended answer and counterclaim.
 {¶ 3} Repede filed a motion for class certification on April 29, 2005, seeking to certify a class consisting of "all Ohio residents who were/are customers of JK Harris Company, LLC, from 1998 to date." JK Harris filed its brief in opposition, and Repede filed a motion for leave to file a reply brief instanter. On October 27, 2005, the trial court entered and journalized an order granting Repede's motion for class certification and certifying the action as a class action. JK Harris filed a timely notice of appeal from this order.
 {¶ 4} Repede states that he is representative of the "all customers" class. Accordingly, his individual dealings with JK Harris need to be examined, because in a class action the claims of all customers will rise or fall based on Repede's own dealings.
 {¶ 5} According to the record, Repede sought assistance from JK Harris regarding his taxes in January 2002. Repede owed the Internal Revenue Service ("IRS") $32,648.59 for unpaid taxes in connection with his business. Repede contacted JK Harris after the IRS had levied his earnings. He had learned about JK Harris through a newspaper advertisement.
 {¶ 6} Repede met with JK Harris on January 29, 2002 and executed a contract to attempt to have his IRS levy released, to prepare and negotiate an Offer-In-Compromise ("OIC") for his unpaid taxes, to prepare federal and state income tax returns for 2001, and to provide financial planning assistance. Repede read and signed the engagement agreement at the January 29 meeting. Repede acknow-ledged that he was instructed to provide a large amount of personal financial information and documentation to JK Harris.
 {¶ 7} On March 22, 2002, JK Harris mailed the completed OIC paperwork to Repede for his signature. In the letter accompanying the OIC paperwork, JK Harris specifically provided the following:
"Please also make sure that you have read the documentationchecklist carefully, and understand that we will not be able tosubmit your Offer in Compromise until all of the information thatapplies to you has been provided.."[1] (Emphasis added.)
 {¶ 8} Repede states that he mailed the OIC documentation back to JK Harris; however, JK Harris stated that it never received the documentation. On April 8, 2002, JK Harris tried to contact Repede to obtain the OIC paperwork. JK Harris left a voicemail message instructing Repede that the levy had been released but that Repede still needed to return the OIC paperwork. On May 1, 2002, JK Harris left Repede voicemail messages on his cell phone, home phone, and work phone inquiring as to the status of the OIC paperwork. The next day, JK Harris was able to contact Repede's wife, who stated that they did not receive the OIC paperwork. Repede's wife told JK Harris to resend the paperwork via Federal Express for next-day delivery, which JK Harris did.[2] JK Harris states that Repede never returned the signed OIC paperwork, and the IRS reinstituted the tax levy.
 I. {¶ 9} Appellants' assignment of error states the following: "The trial court erred and abused its discretion in granting appellee Charles Repede's motion for class certification and certifying an `all customers' class."
 II. {¶ 10} In Hamilton v. Ohio Sav. Bank, 82 Ohio St.3d 67, 70,1998-Ohio-365, the Ohio Supreme Court clarified the standard of review to certify a class action:
"A trial judge has broad discretion in determining whether aclass action may be maintained and that determination will not bedisturbed absent a showing of an abuse of discretion. * * *However, the trial court's discretion in deciding whether tocertify a class action is not unlimited, and indeed is bounded byand must be exercised within the framework of Civ.R. 23. Thetrial court is required to carefully apply the class actionrequirements and conduct a rigorous analysis into whether theprerequisites of Civ.R. 23 have been satisfied."
 {¶ 11} Civ.R. 23 sets forth seven requirements that must be satisfied before a case may be maintained as a class action. Those requirements are as follows: (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be satisfied. Hamilton v. Ohio Sav. Bank,
supra, at 71.
 {¶ 12} In an action for damages, the trial court must specifically find, pursuant to Civ.R. 23(B), that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Id.
 {¶ 13} Performing a "rigorous analysis" of the Civ.R. 23(B)(3) predominance requirement necessitates an examination of "common" versus "individual" issues. A predominance inquiry is far more demanding than the Civ.R. 23(A) commonality requirement and focuses on the legal or factual questions that qualify each class member's case as a genuine controversy. Williams v.Countrywide Home Loans, Inc., Lucas App. No. L-01-1473, 2002-Ohio-5499. Therefore, in determining whether common questions of law or fact predominate over individual issues, "it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication." Schmidt v. Avco Corp. (1984),15 Ohio St.3d 310, 313.
 {¶ 14} The party seeking to maintain a class action has the burden of demonstrating that all factual and legal prerequisites to class certification have been met. Gannon v. City ofCleveland (1984), 13 Ohio App.3d 334, 335. A class action may be certified only if the court finds, after a rigorous analysis, that the moving party has satisfied all the requirements of Civ.R. 23. See Hamilton, supra, at 70.
 {¶ 15} The case at bar is analogous to other recent cases. For example, we find this court's decision in Linn v.Roto-Rooter, Inc., Cuyahoga App. No. 82657, 2004-Ohio-2559, to be applicable to the instant case. In Linn, the customer disputed a miscellaneous supplies charge by the corporation on its technicians' service calls. The corporation argued the trial court abused its discretion by granting class certification because common questions of fact did not predominate. This court agreed. The mere allegation of the corporation's purported "profit-making scheme" did not negate the necessity for establishing the essential elements of each claim. Given the large variance in the jobs performed, i.e., a $75 service call as compared to a $7,500 service call, the amount of miscellaneous supplies used would differ. Absent an individual analysis of these factors, there was no way to determine the corporation's liability under each of the customer's claims. Because the factors required individualized inquiries, this court found that the trial court abused its discretion by finding that common questions of fact predominated.
 {¶ 16} In addition, we find Hoang v. E*Trade Group, Inc.,151 Ohio App.3d 363, 2003-Ohio-301, to be applicable. In Hoang,
the company offered customers online investing services. The investor opened an account, which required that she sign the customer agreement. She commenced an action for damages because of interruptions in service, contending that the service's representations of fast, accurate, and reliable service were false and inaccurate. She sought class certification of all Ohio residents who were customers during those interrupted periods. The trial court granted certification and, on appeal, the court reversed, holding that such certification constituted an abuse of discretion.
 {¶ 17} Even though Repede and some of the other 4,000 plaintiffs may have suffered damage as a result of their dealings with JK Harris, others may not have suffered any damage at all. It would be extremely difficult to distinguish between which plaintiffs have been injured and which have not without an individual analysis of each plaintiff's financial situation.
 {¶ 18} Hoang, provides the following:
"Similarly, in the instant case, some of the plaintiffs havesuffered damages as a result of E*Trade's system interruptionswhile others have not. Some E*Trade customers may not have beentrading during any of the system interruptions, in which casethey were not injured and have no claims. Customers that weretrading may not have suffered any losses as a result of a systeminterruption, in which case they have no claims. The trading ofcustomers who were impacted by the system interruptions wouldhave to be analyzed on a `trade by trade' basis to determine whatprice the customer might have obtained had the systeminterruption not occurred.
"* * *
"This analysis is complex because it requires consideration ofeach individual transaction, other transactions in the samesecurity that occurred in the market, as well as the marketconditions at the time, including the number of orders waiting tobe executed in the market, the size and type of those orders, andother factors. Further, some customers who were impacted by thesystem interruptions may have actually benefitted from theinterruption, in which case they have no claims."
 {¶ 19} Similarly, we find that the factors in the case at bar require extensive individualized inquiries. The instant case requires a case-by-case analysis of each individual taxpayer's situation. Repede has offered no evidence that all class members have suffered some harm to which common questions of law or fact apply. The analysis involved in the instant case requires consideration of the exact services rendered, the nature of the services provided, the representations made by tax preparers, and each plaintiff's understanding of the fee structure and how it applied to their particular tax situation.
 {¶ 20} The questions of exactly which tax preparation services were used, what quality they were, the specific financial and tax-related circumstances of each customer, the outcome of the representation, as well as a number of other factors, all constituted very individualized determinations. Accordingly, there was no predominance of common questions of law or fact that would lean toward class certification. As a result, we find that the trial court abused its discretion by certifying the class when common questions of fact do not predominate.
 {¶ 21} Accordingly, appellants' assignment of error is sustained.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., and Corrigan, J., concur.
[1] See Ex. F to JK Harris' opposition to Repede's motion for class certification.
[2] See Federal Express airbill attached as Ex. H to JK Harris' opposition to Repede's motion for class certification.