OPINION
These consolidated appeals are from the April 27, 2000, and February 8, 2001 judgment entries of the Court of Common Pleas of Marion County. The April 27, 2000 judgment entry denied both class certification and leave to amend the original complaint as filed by Plaintiffs-Appellants, Carl A. Nelson, Sr., Paul Porter, and Walter E. Jacks, Sr. The February 8, 2001 judgment entry granted summary judgment in favor of Defendants-Appellees, Christine Money, Howard Dahill, and Steve Brinkley against the plaintiffs.
On December 30, 1999, a complaint for declaratory judgment and an injunction was filed in the Common Pleas Court of Marion County by Carl A. Nelson, Sr., on behalf of himself, Paul Porter, and Walter E. Jacks, Sr. At the time of filing the complaint, these plaintiffs were inmates at Marion Correctional Institution (hereinafter "MCI").[1] The complaint also described a class of people that would be affected by the actions alleged in the complaint, this class consisting of fellow inmates at MCI. The defendants in this case are employees at MCI: the warden, the deputy warden, and the institution inspector.
In essence, the complaint alleges that the defendants have violated MCI's policy of forwarding the legal mail of inmates even when an inmate's personal account contains insufficient funds to cover postage. Specifically, the plaintiffs allege that MCI had a policy of crediting an inmate's account in order to forward legal mail when an inmate's account did not contain enough money with which to cover postage. The complaint further alleges that at some point this policy was changed without the inmates being informed prior to the change and that this change in policy denies the plaintiffs meaningful access to the courts.
At the time of filing the complaint, the plaintiffs also filed a motion for class certification. The plaintiffs then filed a motion to amend the complaint on February 10, 2000. On February 22, 2000, the trial court filed a journal entry providing dates by which responsive and reply pleadings to the motion to amend were to be filed. Seemingly, the plaintiffs mistook the trial court's February 22, 2000 journal entry as an entry granting them leave to amend, and without leave to do so, the plaintiffs filed an amended complaint on March 3, 2000. The defendants then filed a motion to strike the amended complaint for lack of having leave to file.
The trial court denied the motion for class certification and the motion for leave to amend the complaint by way of a judgment entry filed on April 27, 2000. Based upon its denial of the plaintiffs' motion to amend, the trial court also declared that the motion to strike was moot in its April 27, 2000 entry. Plaintiffs now appeal the trial court's denial of class certification and leave to amend their complaint, Case No. 9-2000-41.
Apparently, the trial court did not realize that the amended complaint was filed prior to it having determined whether to grant leave to amend the complaint. Upon realization that the plaintiffs had already filed an amended complaint, the trial court issued a nunc pro tunc judgment entry on May 31, 2000. In this entry, the trial court purported to amend its April 27, 2000 judgment entry to reflect that the defendants' motion to strike the amended complaint of plaintiffs was well taken and ordered that plaintiffs' amended complaint be stricken.
The trial court then granted summary judgment for the defendants in a judgment entry, dated February 8, 2001, after having denied the plaintiffs' motion for a continuance to conduct discovery and to continue until plaintiffs' appeal was completed. Thereafter, Appellants filed this appeal, Case No. 9-01-12, which was consolidated with Case No. 9-2000-41, and assert the following assignments of error:
Assignment of Error 1:
 The Trial Court abused its discretion and committed prejudicial reversible error in granting summary judgment in favor of Defendant(s)-Appellee(s) when Plaintiff(s)-Appellant(s) timely moved for a Civ.R. 56(F) continuance for purposes of conducting discovery so that Appellee(s) could have obtained evidence to present a fair and adequate defense in opposition with evidence sufficient to meet Civ.R. 56(C), and when an appeal of the Trial Court's original order of April 27, 2000, along with its amended judgment entry of May 31, 2000, in CA/CASE NO. 00-AP-0041 relevant to the Trial Court's previous denial of class certification was still pending before this Court awaiting appellate review, and when a timely jury demand was made when issues of fact exist which should have been determined by a jury.
 Assignment of Error 2:
 The Trial Court committed prejudicial reversible error in granting Defendant(s)-Appellee(s) motion for summary judgment which was based solely upon an erroneous and absurd claim that Plaintiff(s)-Appellant(s) complaint for declaratory judgment sought free legal mail postage, when in fact said complaint along with attached supporting (M.C.I. Policy 14.01) merely sought a declaratory judgment relevant to Appellee(s) actions in refusing to adhere to their own policy, impeded, violated, and interfered with constitutional rights of meaninful (sic) access to a court of law, when insufficient funds exsist (sic) at any given time of mailing legal documents. Additionally, the Trial Court further abused its discretion when it considered evidence and untimely affidavits which were not properly before the Court for consdieration (sic) consistent with the Civ.R. 56(C) standard for review, and further added to the prejudicial effect by not striking those affidavits pursuant to Civ.R. 12(F) which were not timely filed and properly submitted, especially when Appellee(s) failed to timely file a motion clearly demonstrating excusable neglect as required by Civ.R. 6(B)(2) and (D).
 Assignment of Error 3:
 The Trial Court abused its discretion by denying class certification in Plaintiff(s) — Appellant(s)' declaratory judgment action, when other prison inmates like Appellant(s) have an undeniable right to meaningful access to a court of law and opposing counsel and especially since Appellee(s) previously have and continue to impede and interfer (sic) with that right when Appellant(s) and others similarily (sic) situated lack sufficient funds to cover postage at the time of mailing legal documents, yet Appellee(s) grant credit for medical surcharge and other institutional issues. Additionally, the Trial Court abused its decision relevant to the fact the Civ.R. 23 factors were not considered or articulated in its decision.
 Assignment of Error 4:
 The Trial Court committed prejudicial reversible error and further abused its discretion when issuing a nunc pro tunc judgment entry which amended the Trial Court's original April 27, 2000 judgment entry to reflect judicial action not actually taken. Said nunc pro tunc judgment entry granted Appellee(s) motion to strike Appellant's amended complaint which was not considered in the Trial Court's original April 27, 2000 judgment entry, because at that time the Trial Court found that an amended complaint had never been filed when in fact one had been filed filed (sic) on March 3, 2000. Furthermore, the Trial Court clearly demonstrated its attitude as being unreasonable, arbitrary, and unconscionable by denying Appellant(s) permission for leave to amend the pro se complaint after it had originally granted leave. Said actions of the Trial Court denied Appellant(s) a substantial right in a special proceedings action, as well as due process and equal protection as guaranteed by Artical (sic) I section 16 of the Ohio constitution and Section I of the Fourteenth Amendment to the United States Federal Constitution.
 Assignments of Error One and Two:
 Because Assignments of Error One and Two both relate to the grant of summary judgment, they will be considered together. In reviewing a grant of summary judgment, appellate courts are to apply a de novo standard. Lorain Nat'l Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id. The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356, 360.
Appellants maintain that the trial court based its grant of summary judgment solely upon the misstatement that Appellants sought free legal mail postage regardless of their indigency status. Notably, this is the only fact that Appellants dispute. While the trial court did rely on the assumption that Appellants sought free legal mail postage as a second reason for granting summary judgment, it granted the motion based upon a reason independent of this assumption. The court's primary reason for its decision was that the defendants failed to show either that they were actually denied access to the courts or how any denial was prejudicial to the plaintiffs.
Access to the courts is a constitutional right guaranteed to all prisoners. Bounds v. Smith (1976), 430 U.S. 817, 821. Such access must not be merely illusory; it must be "meaningful." Bounds, 430 U.S. at 823
(quoting Ross v. Moffitt (1974), 417 U.S. 600, 611). This constitutional right has been recognized by the United States Supreme Court throughout a series of opinions invalidating various restrictions on prisoners and requiring remedial measures to ensure prisoners were afforded "adequate, effective, and meaningful," access. Bounds, supra.
Docket fees must be waived for indigent prisoners filing appeals and habeas corpus petitions. Burns v. Ohio (1959), 360 U.S. 252, 257. If an inmate is unable to pay for a trial transcript necessary for effective appellate review, one must be provided to him at the state's expense.Griffin v. Illinois (1956), 351 U.S. 12, 20. The same is true of an indigent inmate who cannot afford appellate counsel. Douglas v. Calif. (1963), 372 U.S. 353, 358. In addition, prison authorities may "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law" as a means to providing adequate access. Lewis v. Casey (1995), 518 U.S. 343 (citing Bounds, supra).
While the Court has ruled upon many ways to provide meaningful access, it has not found, nor has the Ohio Supreme Court, that non-indigent inmates are constitutionally entitled to credit for postage for legal mail. Although MCI appears to have had a policy of extending such credit at one time, it was not required to do so and was free to change its policy, which it did. The appellants are similar to any member of society who has to balance a budget, making choices that affect their financial ability to litigate. MCI does not prevent the appellants' access to the courts. It just will not give them a loan to do so.
Furthermore, Appellants do not contend that MCI failed to forward their legal mail at all. Rather, Appellants maintain that MCI did not do so until Appellants' accounts contained sufficient funds. Likewise, Appellants do not maintain that they were indigent, and thus, entitled to free legal mail postage as required by Bounds. See Bounds v. Smith,430 U.S. at 824-825. Therefore, no genuine issue of material fact exists on this issue.
Even assuming that Appellants could establish that they have a constitutional right to credit for legal mail, they must show how Appellees' failure to provide this credit resulted in actual prejudice to them. The complaint alleges that Plaintiffs-Appellants Nelson and Porter had to request continuances in other cases because of the policy change, but it does not allege that these requests were not granted or caused prejudice. In addition, the complaint does not indicate that Plaintiff-Appellant Jacks had to ask for a continuance or was prejudiced in any way by the policy change. "Vague and conclusory allegations do not state the kind of specific injury or prejudice necessary for a claim of denial of access to survive summary judgment." State ex rel. Carter v.Schotten (1994), 70 Ohio St.3d 89, 93 (citations omitted). Much like the facts in Schotten, Appellants have failed to allege "with specificity a reasonable probability that the outcome of any litigation would have been different[.]" Id..
Finally, Appellants also maintain that the trial court abused its discretion in denying their request for a continuance to conduct discovery in order to properly defend against the appellees' motion for summary judgment and to await the pending appeal. The trial court's denial of the motion for a continuance was based upon its determination that this Court had denied Appellants' appeal in Case No. 00-AP-41 on August 4, 2000, thus rendering the motion for continuance moot.
A court's decision to grant or deny a motion for a continuance will not be reversed absent an abuse of discretion. See Civ.R. 56(F). Appellants correctly state that the trial court was incorrect in its determination that this Court denied their appeal. On July 18, 2000, this Court dismissed Case No. 9-00-54 for lack of jurisdiction. Appellants' motion to consolidate Case No. 9-00-41 with Case No. 9-00-54 was denied by this Court on that same date because it was then moot. In fact, there is no order pertaining to these issues entered by this Court on August 4, 2000. Therefore, the trial court's denial of a continuance was erroneous.
Any such error by the trial court was harmless, however. Appellants have not shown how they suffered any prejudice from the denial of a continuance. Appellants' motion for a continuance stated that it was needed in order to conduct discovery. The motion did not state what discovery was to be requested, how this discovery was relevant to defending against Appellees' motion for summary judgment, or why such discovery could not have taken place previously. This Court cannot find any purpose for the granting of a continuance. Thus, any decision by the trial court to deny the motion did not constitute an abuse of discretion.
Assignment of Error Three:
As to the third assignment of error, Civ.R. 23 does not explicitly require "that the trial court make formal findings to support its decision on a motion for class certification[.]" Hamilton v. Ohio Sav.Bank (1998), 82 Ohio St.3d 67, 70. However, the Ohio Supreme Court has suggested "that in determining the propriety of class certification under Civ.R. 23, trial courts make separate written findings as to each of the seven class action requirements, and specify their reasoning as to each finding." Id. at 71. The reason for this suggestion is to enable an appellate court to more readily ascertain whether the trial court abused its discretion in granting or denying class certification, which is the applicable standard for review for motions of this type. Id. at 70-71.
In the case at bar, the trial court gave no reasons for the denial of class certification. This creates difficulty for this Court in determining whether the trial court abused its discretion, and we urge the trial court in the future to articulate its reasoning for the grant or denial of class certification. Nevertheless, this assignment of error is now moot, given this Court's rulings in Assignments of Error One and Two that summary judgment was properly granted by the trial court.
Assignment of Error Four:
Appellants' fourth assignment of error pertains to the trial court'snunc pro tunc judgment entry, filed on May 31, 2000. In this order, the trial court apparently realized that the appellants had filed an amended complaint on March 3, 2000, without the court having ruled upon their motion for leave to amend. The motion for leave was denied on April 27, 2000. As a result, in its May 31, 2000 nunc pro tunc entry, the court ordered that the appellees' motion to strike, which it had declared moot in its April 27, 2000 entry, was well taken and granted. The court then ordered that the amended complaint be stricken.
This Court recently addressed the appropriateness of nunc pro tunc
orders. See State v. Brown (2000), 136 Ohio App.3d 816, 819-820. InBrown, this Court found "that the function of a nunc pro tunc order . . . is, essentially, clerical; it is to record officially an action or actions of a court actually taken but not duly recorded." Id. at 819 (citations omitted). Also, "`clerical mistake' refers to a mistake or omission, mechanical in nature and apparent on the record, which does not involve a legal decision or judgment." Id. at 819-820 (citations omitted). Furthermore, nunc pro tunc orders are utilized to reflect what the court issuing the order "actually decided, not what the court might or should have decided or what the court intended to decide." Id. at 820.
What the trial court's entry in the case sub judice represents is an attempt to adjudicate what the court might have or should have decided or what the court intended to decide rather than a clarification of what the court actually decided. The mistake that brought about the trial court'snunc pro tunc entry was not clerical. As such, the use of the nunc protunc entry in this case was erroneous. However, the end result of thenunc pro tunc entry was the same as that of the April 27, 2000 judgment entry: the amended complaint was not allowed, whether it was not permitted to be filed initially or whether it was stricken subsequent to its impermissible filing. In addition, the defects of the original complaint that the amendment sought to cure were not the basis of the granting of summary judgment. Thus, this assignment of error is also moot based upon this Court's findings as to Assignments of Error One and Two.
For all of these reasons, Appellant's assignments of error are overruled. It is the order of this Court that the judgment of the Common Pleas Court of Marion County be affirmed.
BRYANT, J., concurs.
WALTERS, P.J. concurs in judgment only.
[1] Paul Porter has since been transferred to North Central Correctional Institution.