[Cite as *Midland Funding, L.L.C. v. Colvin*, 2022-Ohio-572.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

MIDLAND FUNDING, LLC,

    PLAINTIFF-APPELLANT,                 CASE NO.  5-21-04

    v.

CASSANDRA COLVIN, ET AL.,              O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2013 CV 00459

**Judgment Affirmed**

**Date of Decision:   February 28, 2022**

APPEARANCES:

    *H. Toby Schisler* **for Appellant**

    *Ronald L. Frederick* **for Appellee**

**SHAW, J.**

{**¶1**} Plaintiffs/counterclaim-defendants-appellants, Midland Funding LLC ("Midland"), Midland Credit Management ("Midland Credit") and Encore Capital Group, Inc. ("Encore"), collectively (the "Midland parties"), appeal the January 19, 2021 judgment of the Hancock County Common Pleas Court granting the motion for class certification filed by defendant/counterclaim-plaintiff-appellee, Cassandra Colvin ("Colvin").

*Background*

{**¶2**} Midland is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the Federal Debt Collection Practices Act ("FDCPA"). Generally, Midland purchases consumer debt from other entities and attempts to collect it. Midland operates throughout the United States and it has filed thousands of collection actions in Ohio alone.[1]

{**¶3**} On April 22, 2013, Midland filed a complaint against Colvin in the Hardin County Municipal Court alleging that Colvin had defaulted on a Chase Bank credit-card account, that Midland had purchased Colvin's delinquent account from Chase Bank, and that, despite Midland's informal efforts to collect the amount owed, Colvin failed to pay the balance due.

---

[1] Colvin alleged that in the year prior to Midland filing suit against her, Midland filed approximately 11,000 lawsuits in Ohio. For the sake of argument, the Midland parties used the 11,000 figure as an average number of yearly filings in their motion against class certification.

{¶4} Attached to the complaint was Colvin's former Chase account summary showing Colvin's address as "7850 US Route 30 #30" in "Forest, OH 45843-8845." (Doc. No. 8). The Village of Forest, Ohio, is located in Hardin County.[2] In the complaint that Midland filed in the Hardin County Municipal Court, Midland requested judgment against Colvin in the amount of $950.60 along with other related relief.[3]

{¶5} On June 5, 2013, Colvin filed a motion to dismiss Midland's complaint alleging that she "lives in Hancock County, Ohio, and has *never* lived in Hardin County, Ohio." (Emphasis added.) (*Id.*) Colvin contended that while the Village of Forest was located in "the Northwest corner of Hardin County," her actual residence was outside of Forest, in *Hancock* County. (Doc. No. 115). Further, Colvin noted that Midland "made no allegation that there was any contract signed in Hardin County, or any other connection to Hardin County." (*Id.*) Colvin thus argued that the Hardin County Municipal Court did not have subject-matter jurisdiction over Midland's action because Midland's action did not have a territorial connection to the court. On June 14, 2013, Midland filed a memorandum in opposition to Colvin's motion to dismiss citing the fact that Colvin's listed address on her Chase account

---

[2] The "General Definitions" in Forest, Ohio's Codified Ordinances define "County" as "Hardin County, Ohio." 101.02(e). Accessible online at: https://codelibrary.amlegal.com/codes/forest/latest/forest_oh/0-0-0-512.

[3] Midland alleged that Colvin owed $929.18 along with $21.42 in interest, totaling $950.60.

was in Forest, Ohio, and the action had been filed in Hardin County, where Forest was located.

{¶6} On June 27, 2013, the Hardin County Municipal Court issued its ruling on Colvin's motion to dismiss determining that Colvin "at all times relevant lived in Hancock County, Ohio" and that "there does not appear to be any nexus to the territory over which [the Hardin County Municipal Court] has jurisdiction." (Doc. No. 8). However, the Hardin County Municipal Court did not dismiss Midland's action outright; rather, the court transferred Midland's action to the Findlay Municipal Court at Midland's cost.

{¶7} On September 3, 2013, after the case had been transferred to the Findlay Municipal Court, Colvin filed a combined answer to Midland's complaint, counterclaim against Midland, and third-party complaint adding third-party defendants-appellees, Midland Credit and Encore, as third-party defendants.[4] In her counterclaim and third-party complaint, Colvin alleged that the Midland parties violated FDCPA provision 15 U.S.C. § 1692i(a) when Midland filed suit against her in the Hardin County Municipal Court because she did not reside within the territorial jurisdiction of the Hardin County Municipal Court at the time Midland

---

[4] Although Midland was the only plaintiff named in the complaint filed against Colvin in the Hardin County Municipal Court, Colvin alleges that Midland, Midland Credit, and Encore "operate as a de facto single business interest, and jointly plan all significant operations and business activities, including but not limited to, debt collection and litigation of collection lawsuits in Ohio * * *." (Doc. No. 8). The Midland parties adamantly dispute this allegation.

-4-

filed its complaint and she did not sign the contract underlying her alleged debt to Chase Bank within the territorial jurisdiction of the Hardin County Municipal Court.[5]

{¶8} Colvin further maintained that the Midland parties "regularly file[] collection actions against Ohio residents in counties where the defendant does not live and did not sign a contract, including * * * instances where [the Midland parties] used the city or village of defendants' postal address without determining the physical location of the address," in violation of the FDCPA. (Doc. No. 8). Accordingly, Colvin asserted claims on behalf of a class of plaintiffs who were injured by the Midland parties' alleged violations of the FDCPA. Colvin referred to this class of plaintiffs as the "FDCPA Class." (*Id.*) Colvin requested a declaration that the Midland parties violated the FDCPA when they brought suit against class members in improper venues, actual and statutory damages as provided for by 15

---

[5] 15 U.S.C. 1692i reads:

**(a) Venue**

**Any debt collector who brings any legal action on a debt against any consumer shall—**

**(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or**

**(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—**

**(A) in which such consumer signed the contract sued upon; or**

**(B) in which such consumer resides at the commencement of the action.**

U.S.C. § 1692k(a)(1)-(2)[6], and costs of the action and reasonable attorney's fees as provided for by 15 U.S.C. § 1692k(a)(3).

**{¶9}** Due to the fact that the amount of recovery Colvin was seeking exceeded the jurisdictional limit of the Findlay Municipal Court the case was subsequently transferred to the Hancock County Common Pleas Court.

**{¶10}** On November 7, 2013, the Midland parties filed their joint answer to Colvin's counterclaim and third-party complaint. The answer was amended December 5, 2013.[7]

**{¶11}** In March 2015, Colvin moved to consolidate her case with case number 2015-CV-94, Caitlin Gilbert v. Midland Funding LLC ("Gilbert"). *See Gilbert v. Midland Funding, L.L.C.*, 3d Dist. Hancock No. 5-19-11, 2019-Ohio-5295, ¶ 5. On May 21, 2015, the trial court ordered that Colvin's case be consolidated with Gilbert *for purposes of discovery*.

**{¶12}** On February 22, 2016, with leave of the trial court, Colvin filed an amended counterclaim/third-party complaint. On March 4, 2016, the Midland parties filed their answer to Colvin's amended counterclaim/third-party complaint.

---

[6] Pursuant to 15 U.S.C. 1692k(a)(2)(B), in the case of a class action, recovery is "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector[.]"

[7] In its amended answer, Midland noted that Colvin's zip code "falls within three different counties." (Doc. No. 23). Because of the unusual zip code, Midland asserted, *inter alia*, the affirmative defense of "Bona Fide error" to Colvin's claims, arguing that the mistake was not intentional, which would prevent liability under 15 U.S.C. § 1692k(c), which reads "A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

{¶13} On June 1, 2017, Colvin filed a motion for class certification pursuant to Civ.R. 23. Colvin sought to certify a class defined as:

   a. **All persons who have been sued in Ohio Courts by [the Midland parties] from April 22, 2012 until the time this class is certified;**

   b. **where the address on the face of the complaint and/or the address at which the Defendant was served are not within the geographical limits of the court where the suit was filed; or**

   c. **where [the Midland parties] filed suit in a court where the contract was not signed; and**

   d. **the debt alleged by [the Midland parties] was incurred for personal, family or household use.**

(Doc. No. 106). On June 22, 2017, the Midland parties filed their memorandum in opposition to Colvin's motion for class certification.

{¶14} On June 12, 2018, the trial court filed an entry analyzing Colvin's motion for class certification. The trial court set forth the appropriate legal authority, including the 7 requirements for class certification under Civ.R. 23, which *all* had to be satisfied in order for a class action to proceed. *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, ¶ 16; *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 71 (1998). These 7 requirements include the following:

   **(1)   an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be**

**questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.**

*Hamilton* at 71, citing Civ. R. 23(A) and (B); *Warner v. Waste Mgt.*, *Inc.*, 36 Ohio St.3d 91 (1988).[8]

{¶15} In conducting its analysis on the class certification issue, the trial court first concluded that the proposed class definition was identifiable and unambiguous (satisfying requirement 1), that Colvin was a member of the proposed class (satisfying requirement 2), and that the proposed class was sufficiently numerous with over 150 purported examples of people who could be class members (satisfying requirement 3). Thus the trial court found that the first 3 of the 7 class requirements were met.

{¶16} However, in proceeding to address the "commonality," "typicality," and "adequacy-of-representation" requirements (numbers 4-6 above, respectively), the trial court determined that there were significantly different questions of law and fact between Colvin and the proposed class members. The trial court reasoned that Colvin's suit was transferred to the correct jurisdiction unlike other potential class members, that Colvin had not had a judgment rendered against her unlike other class members, and that Colvin was only seeking statutory damages, whereas some

---

[8] Importantly, as argued in this case under Civ.R. 23(B)(3), the 7th requirement broken into two parts: "predominance" and "superiority."

potential class members might be entitled to actual damages as well. Based on these issues, the trial court found that the proposed class did not meet all the requirements for certification, failing requirements 4, 5, and 6. The trial court thus denied Colvin's motion for class certification, never reaching the 7th requirement for certification due to its finding that requirements 4 through 6 were not met.

{¶17} Colvin appealed the trial court's denial of class certification to this Court in *Midland Funding LLC v. Colvin*, 3d Dist. Hancock No. 5-18-15, 2019-Ohio-5382 ("*Colvin I*") arguing that the trial court abused its discretion by determining that the "commonality," "typicality," and "adequacy-of-representation" requirements were not met in this matter. We analyzed each requirement in turn, first determining that Colvin met the "commonality" requirement because, "provided that the Midland parties did in fact file suit against Colvin and the rest of the proposed class in improper venues, Colvin and the rest of the proposed class suffered the exact same, complete injury as soon as suit was filed against them." *Colvin I* at ¶ 23.

{¶18} Further, we rejected the trial court's argument that Colvin's claims were not common or typical of the class because her damages were only statutory while other potential class members might have actual damages, finding that the trial court should not dispose of a class certification *solely* on that basis. Further, we noted that an examination of differing damages was "more appropriately

addressed in the analysis of Civ.R. 23(B)(3)'s predominance and superiority requirements," which is the 7th requirement for class certification—the requirement that the trial court never reached. *Id*. at ¶ 24. Unlike the "commonality" requirement, the "predominance inquiry is far more demanding" and the damages issue raised by the trial court could have been particularly relevant there. *Williams v. Countrywide Home Loans, Inc.*, 6th Dist. Lucas No. L-01-1473, 2002-Ohio-5499, ¶ 35, citing *Jackson v. Motel 6 Multipurpose, Inc.* (C.A.11, 1997), 130 F.3d 999, 1005. However, we found that using damages as the primary disqualifier in what was effectively a lower bar to the commonality requirement was improper.

{¶19} Whereas the trial court focused on the differences between potential class members with respect to the commonality requirement (requirement 4), we focused on the shared attributes between Colvin and the proposed class, finding that commonality was met in this matter. The shared attributes included the allegations that Midland engaged in a pattern of filing suit against individuals in jurisdictions where the individuals did not reside at the time the suit was filed and where the individuals did not sign the contracts underlying the alleged debts. "[T]he common issue of law is whether the Midland parties' pattern of filing suit in such jurisdictions, if proven, resulted in violations of the FDCPA." *Id*. at ¶ 27. Thus we determined that Colvin had satisfied the commonality requirement.

{¶20} With the requirement of "commonality" satisfied (requirement 4), we next addressed the issue of "typicality" (requirement 5), finding that the trial court erred by determining that Colvin's injury was atypical of the other members of the class. We reasoned that Colvin and the other class members had the same injury because "[b]eing sued in the improper venue *is* the injury." *Id*. at ¶ 30. We determined that even if some members of the class would be seeking actual damages in addition to statutory damages, typicality was not defeated in this matter. After conducting a lengthy review of the "typicality" requirements and the parties' arguments regarding them, we summarized that:

> **although Colvin is claiming only statutory damages, her claims are not atypical of the claims of class members who may be entitled to both statutory damages and actual damages. Furthermore, the fact that Colvin is not subject to the defense of res judicata does not make her atypical of the class because res judicata is likely inapplicable to many members of the proposed class as well. Similarly, the bona fide error defense that the Midland parties may assert against Colvin is not atypical of the bona fide error defenses that the Midland parties may assert against class members who were sued by the Midland parties' internal legal department. Ultimately, Colvin's FDCPA fair-venue claim arises from the same alleged conduct that gives rise to the fair-venue claims of absent class members, and Colvin's claim is based on the same legal theory. *See Tedrow* [*v. Cowels*, S.D. Ohio No. 2:06-cv-637], 2007 WL 2688276, \*7; *Holloway* [*v. Pekay*, N.D. Ill. No. 94 C 3418], 1995 WL 736925, \*2. Moreover, at least concerning class members who were sued by the Midland parties' internal legal department, we have been unable to identify any express conflict between Colvin and the class. For these class members at least, Colvin will advance their interests and claims. *Tedrow* at \*7 ("The proofs that are required for [the class representatives'] claims to prevail are those necessary for**

> **the putative class to prevail. That is, all interests are advanced by proving that Defendant has a policy and/or practice of bringing civil actions against debtors in violation of federal * * * law.").** **Accordingly, we conclude that the trial court erred by holding that Colvin completely fails to satisfy Civ.R. 23(A)(3)'s typicality requirement.**

*Id.* at ¶ 45.

{¶21} With our determination that the 4th and 5th requirements for class certification had been satisfied in the trial court (commonality and typicality, respectively), we considered the trial court's determination with respect to the "adequacy-of-representation" requirement in Civ.R. 23(A)(4) (requirement 6). In our analysis, we determined that the trial court improperly focused solely on whether the record established that Colvin was an adequate representative for her class rather than whether Colvin's counsel was adequate. We determined that Colvin's counsel was adequate and that Colvin was an adequate representative. Further, we found that many of the same reasons the trial court used to disqualify the commonality and typicality requirements, such as differing damages between Colvin and other class members, were not sufficient to disqualify Colvin under the adequacy-of-representation requirement.

{¶22} Thus, after determining that the trial court erred by denying class certification on the basis of the 4th, 5th, and 6th requirements for class certification, we reversed the trial court's judgment, finding that the trial court would need to proceed to address the 7th class certification requirement in the first instance:

-12-

namely whether the proposed class met any of the requirements of Civ.R. 23(B). However, we specifically stated that we offered no opinion as to whether the trial court should ultimately certify Colvin's proposed class.

{¶23} The Midland parties appealed our decision to the Supreme Court of Ohio and the Court declined to accept jurisdiction. *Midland Funding*, *L.L.C. v. Colvin*, 158 Ohio St.3d 1489, 2020-Ohio-1634 (Kennedy and DeWine, J.J., dissenting). After the Supreme Court of Ohio declined jurisdiction, with the case officially remanded, the trial court held a "Zoom" hearing to discuss the impact of this Court's reversal. The trial court indicated that the remaining issue to be decided with respect to class certification was whether Colvin had satisfied the 7th certification requirement, which required Colvin to establish the presence of one of the factors of Civ.R. 23(B). Colvin argued that the class should be certified specifically under Civ.R. 23(B)(3), which required her to establish that "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." (Emphasis added.) Civ.R. 23(B)(3).[9]

{¶24} The trial court allowed the parties to submit written memoranda regarding class certification in order to make its determination on remand. Initially,

---

[9] In short, we will refer to the Civ.R. 23(B)(3) requirements as "predominance" and "superiority."

the Midland parties submitted a memorandum arguing that another case released by this Court the week before *Colvin* was decided—by the same panel of judges—*Gilbert v. Midland Funding LLC*, 3d Dist. Hancock No. 5-19-11, 2019-Ohio-5295, should prevent the certification of Colvin's class, regardless of Civ.R. 23(B)(3) factors. In essence, the Midland parties argued that our decision in *Gilbert*, which interpreted the Supreme Court of Ohio's decision in *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, established that it would be improper for the Hancock County Common Pleas Court to determine the validity of other court's final judgments, thus the class in that case could not be certified.

{¶25} Colvin disagreed with Midland's reading of *Gilbert*, arguing that to some extent we had already rejected the Midland parties' arguments in *Colvin I*,[10] and further that an FDCPA claim concerned the *method* of collecting debt, not whether the underlying debt in other courts was valid. Thus Colvin argued that both *Gilbert* and *Lingo* were inapplicable.

{¶26} With *Gilbert* and *Lingo* addressed in separate memoranda, the parties then submitted memoranda specifically as to the issue of the remaining class certification requirements in Civ.R. 23(B)(3). Importantly, Colvin's memorandum stated that in light of our decision in *Colvin I*, the proposed class had "reconsidered the relief sought and available in the FDCPA matter," stating that the proposed class

---

[10] *Gilbert* was not mentioned in *Colvin I* other than to indicate the cases were consolidated for discovery purposes. *Lingo* was not mentioned at all.

now sought to amend the prayer for relief to seek *only* statutory damages on behalf of the entire class, rather than statutory *and* actual damages. (Doc. No. 133). Colvin argued that with this amendment to the damages being sought, any arguments that the Midland parties made that differing damages among class members should prevent a finding of predominance or superiority were, effectively, moot.

{¶27} In response, the Midland parties argued that even if Colvin met all 6 of the other requirements for class certification, which Midland still disputed despite our holding on appeal, Colvin could not meet the predominance and superiority requirements in Civ.R. 23(B)(3) because of the various differences between Colvin and the class members. The Midland parties contended that the differences required a significant amount of individual analysis in each case, especially with respect to different defenses like "bona-fide error" and "statute of limitations." Moreover, the Midland parties emphasized that even if Colvin had passed the lower bar of the class certification requirement of commonality, "A predominance inquiry is far more demanding than the Civ.R. 23(A) commonality requirement and focuses on the legal or factual questions that qualify each class member's case as a genuine controversy." *Williams v. Countrywide Home Loans, Inc.*, 6th Dist. Lucas No. L-01-1473, 2002-Ohio-5499, ¶ 35, citing *Jackson v. Motel 6 Multipurpose, Inc.* (C.A.11, 1997), 130 F.3d 999, 1005.

{¶28} On January 19, 2021, the trial court filed its "Decision on Remand" readdressing Colvin's motion for class certification in light of this Court's determination in *Colvin I*. The trial court indicated that the remaining issue before it was to determine whether Colvin satisfied the 7th requirement for certification, specifically Civ.R. 23(B)(3). In order to do so, Colvin had to establish the "predominance" and "superiority" requirements. With regard to predominance, the trial court held as follows:

> **In making this [predominance] determination, the Court cannot ignore the findings of the Appellate Court on the question of commonality addressed in its Civ.R. 23(A) analysis. * * ***
>
> **This Court's focus on the damages question as the difference maker was rejected. With that distinction eliminated from the equation, the Court cannot find a basis under Civ.R. 23(B) to deny certification. Upon review of the basic underlying legal and factual issues they remain essentially the same for all members, i.e. were they sued in the wrong jurisdiction? *See generally Schmidt v. Avco Corp*., 15 Ohio St.3d 310, 473 N.E.2d 822.**
>
> **The Court further notes that, unlike in [*Gilbert*], a similar case to this, the class action will not fail on the grounds that it violates the precedent set by *Lingo v. State of Ohio*, 138 Ohio St.3d 427, 2014-Ohio-1052. Here, Colvin makes clear that the only damages she now seeks are for statutory damages that arise under the FDCPA as a result of the alleged violations by Midland of the fair-venue provision. *See* 15 U.S.C. § 1692i.**
>
> **Colvin does not seek equitable relief in the form of disgorgement of proceeds collected as a result of these actions. As a result, and unlike in Gilbert, this Court would not be tasked with determining the validity of other Court's judgments, rather, the only determination would be whether the fair-venue provision**

**of the FDCPA was violated, and if so, award appropriate damages under the federal statute.**

(Doc. No. 135). Thus the trial court determined that "predominance" was satisfied here.

{¶29} After finding that the "predominance" requirement was satisfied, the trial court proceeded to the "superiority" requirement, determining that

> **[t]here is a significant benefit to all the proposed class members to have this matter litigated collectively. The evidence suggests there are many individual claims across the four corners of this state. This presents a great difficulty to adequately address these issues and makes likely the prospect of uneven or even conflicting legal responses. Moreover, as many of the potential class members never had their day in court and in some cases not been served personally with the complaint and summons, they may not even be aware of the potential injury. A broad based attempt to notify class members would provide an opportunity for the potentially aggrieved to participate. For these reasons, a class action would be the superior method of addressing these claims.**

(*Id.*)

{¶30} Finally, after rejecting other arguments made by the Midland parties, the trial court found that Colvin's motion for class certification was well-taken. The Midland parties appealed from the trial court's determination, asserting the following assignment of error for our review.[11]

---

[11] In its decision, the trial court ordered "Counsel for Plaintiff" to prepare an appropriate final entry. Before a final entry could be filed, the Midland parties filed a notice of appeal. This Court administratively noted the issue of the lack of a final appealable order since a judgment entry had not been filed, and a judgment entry was subsequently filed reflecting the trial court's decision. Notably, the judgment entry granted the motion for class certification and incorporated the decision as if by reference as if it were fully restated.

**Assignment of Error**

**The trial court erred by granting Colvin's Motion for Class Certification.**

{¶31} In their assignment of error, the Midland parties argue that the trial court abused its discretion by certifying the class in this matter. Specifically, the Midland parties argue that the predominance and superiority requirements of Civ.R. 23(B)(3) were not established.

Standard of Review

{¶32} At the trial court level, the party seeking to maintain a class action has the burden to demonstrate that the factual and legal prerequisites to class certification have been met. *Blue Ash Auto, Inc. v. Progressive Cas. Ins. Co.*, 8th Dist. Cuyahoga No. 104251, 2016-Ohio-7965, ¶ 11. However, once a trial court has made its determination with regard to class certification, that "'determination will not be disturbed absent a showing of an abuse of discretion.'" *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 136 Ohio St.3d 231, 2013-Ohio-3019, ¶ 25 quoting *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201 (1987); *Colvin I* at ¶ 15. "[T]he appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 70 (1988). "'Abuse of discretion has been defined as more than an

error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable.'" *Stammco* at ¶ 25, quoting *Marks* at 201. "'A finding of abuse of discretion, particularly if the trial court has refused to certify, should be made cautiously.'" *Id.*, quoting *Marks* at 201.

**{¶33}** Notably, the trial court's discretion, while expansive, "'is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23. The trial court is required to carefully apply the class action requirements and conduct a rigorous analysis into whether the prerequisites of Civ.R. 23 have been satisfied.'" *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, ¶ 20, quoting *Hamilton* at 70.

Analysis

**{¶34}** This appeal requires us to determine whether the trial court abused its discretion by finding that Colvin established the final requirement of class certification pursuant to Civ.R. 23(B)(3). CivR. 23(B)(3) reads as follows:

> **(B) * * * A class action may be maintained if Civ.R. 23(A) is satisfied, and if:**
>
> **\* \* \***
>
> **(3)   the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:**

    **(a)   the class members' interests in individually controlling the prosecution or defense of separate actions;**

    **(b)   the extent and nature of any litigation concerning the controversy already begun by or against class members;**

    **(c)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and**

    **(d)   the likely difficulties in managing a class action.**

**{¶35}** With regard to analyzing Civ.R. 23(B)(3), the Supreme Court of Ohio has stated,

> **While Civ.R. 23(B)(3) sets forth the general rule, clear guidance as to its meaning and application has been elusive.** *Schmidt,* **15 Ohio St.3d at 313, 15 OBR 439, 473 N.E.2d 822. However, we have held that "it is not sufficient that common questions merely exist; rather, the common questions must represent a significant aspect of the case and they must be able to be resolved for all members of the class in a single adjudication. And, in determining whether a class action is a superior method of adjudication, the court must make a comparative evaluation of the other procedures available to determine whether a class action is sufficiently effective to justify the expenditure of judicial time and energy involved therein." Id**.

*In re Consol. Mtge. Satisfaction Cases*, 97 Ohio St.3d 465, 2002-Ohio-6720, ¶ 8.

**{¶36}** Some case authority has developed further guidance. For example, numerous Ohio Appellate Courts have stated that "*A predominance inquiry is far more demanding than the Civ.R. 23(A) commonality requirement* and focuses on the legal or factual questions that qualify each class member's case as a genuine controversy." (Emphasis added.) *Repede v. Nunes*, 8th Dist. Cuyahoga No. 87277,

Case No. 5-21-04

2006-Ohio-4117, ¶ 13,citing *Williams v. Countrywide Home Loans, Inc.*, 6th Dist. Lucas App. No. L-01-1473, 2002-Ohio-5499; *Haas v. Behr Dayton Thermal Prods., L.L.C.*, 2d Dist. Montgomery No. 21586, 2007-Ohio-571, ¶ 27; *Assn. for Hosp. & Health Sys. v. Ohio Dept. of Human Serv.*, 10th Dist. Franklin No. 04AP-762, 2006-Ohio-67, ¶ 25.

{¶37} In its decision on the matter, the trial court recited the controlling authority then proceeded to analyze whether Civ.R. 23(B)(3) was met here. With regard to predominance, the trial court noted that in its original decision that was reversed by this Court, it had found that Colvin's claims were not common or typical of other class members largely due to Colvin seeking only statutory damages, while other class members would be seeking statutory and actual damages. The trial court found this to be a significant difference that was the primary factor in defeating class certification. We disagreed with the trial court that the issue of differing damages defeated the commonality or typicality requirements, and reversed the trial court. After remand, the trial court stated that we had removed "damages" from the equation "as the difference maker" in *Colvin I*, thus intimating that differing damages could not prevent class certification.

{¶38} The trial court's statement in its decision is not precisely accurate, as we stated in *Colvin I* that the differing damage issue did not prevent the "commonality" requirement from being satisfied; however, we specifically stated

-21-

that the issue of "differing damages" was more "appropriately addressed" in the analysis of Civ.R. 23(B)(3)'s predominance and superiority requirements. *Colvin I* at ¶ 18. Thus the different damages cited by the trial court in its first decision prior to *Colvin I* could have been particularly relevant in the predominance analysis before us.

**{¶39}** However, after *Colvin I* remanded the case to the trial court, Colvin indicated that the *entire class was no longer seeking actual damages*; rather, the entire class was only seeking statutory damages. In its decision certifying the class, the trial court emphasized this change in the damages being sought by Colvin, stating that "Colvin makes clear that the only damages she now seeks are for statutory damages that arise under the FDCPA as a result of the alleged violations by Midland of the fair-venue provision." (Doc. No. 135). Thus while the differing damages could have been particularly relevant to the predominance issue, the class members elected only to seek statutory damages, largely removing the issue of damages from the analysis as the trial court ultimately stated.

**{¶40}** With differing damages removed from the equation, the trial court found that the underlying factual and legal issues remained the same for all class members: "i.e. were they sued in the wrong jurisdiction?" (*Id.*) Thus the trial court determined that predominance was satisfied in this case.

{¶41} The Midland parties attempt to undermine the trial court's finding that common questions of law and fact predominate in this matter by arguing, *inter alia*, that the Midland parties have different defenses with respect different members of the class. The Midland parties argue that in some cases, including Colvin's, they would have a very viable defense of bona-fide error under 15 U.S.C.A. 1692k(c). In other cases, the Midland parties argue that they have a res judicata defense, or a statute of limitations defense.

{¶42} Contrary to their argument, the Midland parties cite no controlling authority showing that defenses against members of the class should prevent certification of the class. While the Midland parties may have some defenses to some or all of the class members, we cannot find that the trial court abused its discretion in determining that the issue of defenses does not prevent certification. This is particularly true where, as the trial court stated, the factual and legal issues remain essentially the same, that being whether the class members were sued in the wrong jurisdiction. "[C]lass action treatment is appropriate where the claims arise from standardized forms or *routinized procedures*, notwithstanding the need to prove reliance."[12] (Emphasis added.) *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 84 (1998). With the differing damages issue removed from the equation, we

---

[12] The Midland parties argue that no routine procedures have been established in this matter; however, there are allegations that Midland routinely filed collection actions in the inappropriate jurisdiction, and their general process for filing by in-house counsel was detailed by Kimberly Klemenok's in her deposition.

cannot find that the trial court abused its discretion by determining that the remaining questions common to the class predominate. The singular, narrow question of whether the class members were sued in the wrong jurisdiction is a "significant aspect of the case" and it is "capable of resolution for all members in a single adjudication." *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 204 (1987).

{¶43} We are also not persuaded by the lengthy string-cite the Midland parties presented in their brief to this Court in an attempt to establish that "predominance" has not been met in this matter. As Colvin responded in her brief, there are significantly different factual and legal issues in the cases cited by the Midland Parties that require far more individualized analysis of each class member. For example, in *Marks*, *supra*, the Supreme Court of Ohio upheld a trial court's discretion denying class certification where events prior to commission of the tort would have to be looked at for each individual, the nature of the wrongdoing would have to be analyzed for each individual, the identity of the responsible parties had to be established, the standard of care owed to class members could differ, and legal liability could differ. *Marks* at 206.

{¶44} Similarly, in *Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 314 (1984), the Supreme Court of Ohio found that a trial court did not abuse its discretion by denying class certification when individual issues predominated. The Court thus *upheld a trial court's discretion* in addition to finding that individual issues

-24-

predominated, namely that elements of inducement and reliance had to be proven on an individual basis. Some other cases cited by the Midland parties contain factual or legal distinctions that do not undermine, but often in fact reaffirm, a trial court's broad discretion. *See Hall v. Jack Walker Pontiac Toyota, Inc.*, 143 Ohio App.3d 678, 687 (2nd Dist.2000) (upholding trial court's denial of class certification where issues had to be determined such as whether contracts, advertising and loan agreements violated the CSOA *and* it had to be determined the behavior of appellee towards an individual appellant to determine whether that made appellee a credit services organization); *Cannon v. Fid. Warranty Servs., Inc.*, 5th Dist. Muskingum No. CT2005-0029, 2006-Ohio-4995 (upholding trial court's denial of class certification where common questions did not predominate). Others cases cited by the Midland parties just strongly illustrate how different the factual and legal circumstances are. *See Linn v. Roto Rooter, Inc.*, 8th Dist. Cuyahoga No. 82657, 2004-Ohio-2559, ¶ 23 (individual issues predominated where, *inter alia*, each potential class member would have to be analyzed to determine "the nature of the service provided, the representations made by technicians, and each plaintiff's understanding of the fee.").[13]

---

[13] We are aware that the Midland parties cite many other cases in addition to those mentioned in this opinion. Again, broadly, we do not find that the cases cited by the Midland parties compel us to find an abuse of discretion here.

{¶45} We also do not find that the Midland parties have offered compelling legal authority that would require us to overturn the trial court's discretion on this issue. Accordingly, we find that the trial court did not abuse its discretion by determining that the predominance requirement for certification was met here.

{¶46} Next, we turn to the trial court's finding with regard to the "superiority" requirement of class certification. In its decision, the trial court found that there was a significant benefit to the class members to have the case adjudicated collectively. The trial court also found that there were numerous claims all over the state that could lead to uneven or conflicting legal responses. Further, the trial court stated, "A broad based attempt to notify class members would provide an opportunity for the potentially aggrieved to participate." (Doc. No. 135). Thus the trial court determined that a class action would be the superior method of addressing these claims.

{¶47} Again, we can find no abuse of discretion with the trial court's analysis. We reiterate that the Supreme Court of Ohio has stated, "[T]he appropriateness of applying the abuse-of-discretion standard in reviewing class action determinations is grounded not in credibility assessment, *but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket*." (Emphasis added.) *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 70 (1988). Stated differently, "[a] trial court which

-26-

routinely handles case-management problems is in the best position to analyze the difficulties which can be anticipated in litigation of class actions." *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 201 (1987). Here, the trial court seems satisfied that there is a desirability of concentrating the litigation, that the Hancock County Common Pleas Court would be an appropriate forum to produce more uniform responses to the matter, and that the class itself is manageable. *See* Civ.R. 23(B).

{¶48} Moreover, the Supreme Court of Ohio stated in *Hamilton*,

> **The purpose of Civ.R. 23(B)(3) was to bring within the fold of maintainable class actions cases in which the efficiency and economy of common adjudication outweigh the interests of individual autonomy. * * * Thus, "[t]his portion of the rule also was expected to be particularly helpful in enabling numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights." 7A Wright, Miller & Kane,** *supra,* **at 518, Section 1777.**

*Hamilton* at 80. After reviewing the record, the applicable legal authority, and the arguments of the parties, we cannot find that the trial court abused its discretion by finding that the "superiority" requirement of class certification was met here.

{¶49} Finally, before we conclude, we must address a separate argument raised by the Midland parties. Throughout their brief, the Midland parties contend that *Gilbert v. Midland Funding, L.L.C.*, 3d Dist. Hancock No. 5-19-11, 2019-Ohio-5295, and *Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, should prevent recovery in this matter because, in order for Colvin's class to prevail, the trial court

would have to invalidate or "void" judgments from other courts over which the trial court did not have jurisdiction. We disagree. Just as the trial court suggested, recovery in this matter (assuming any affirmative defenses such as bona-fide error are overcome) depends only upon whether the FDCPA was violated. The validity of other court's judgments would not be determined.[14] Thus we do not find that *Gilbert* or *Lingo* control here.

{¶50} In sum, we find that the trial court did not abuse its discretion by finding that the "predominance" and "superiority" requirements of class certification were established in this matter. The Midland parties' arguments to the contrary are not well-taken, and their assignment of error is overruled.

*Conclusion*

{¶51} For the foregoing reasons the Midland parties' assignment of error is overruled and the judgment of the Hancock County Common Pleas Court is affirmed.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur**

**/jlr**

---

[14] The Midland parties argue that Gilbert is a member of Colvin's proposed class, and affirming the trial court's class certification here would lead to the "peculiar" outcome of Gilbert being unable to recover in her case individually, but being able to recover as part of Colvin's class. However, Gilbert's case did not involve an FDCPA claim like the one before us, thus it is not the same. Notably, there was also disagreement at oral argument about whether Gilbert was actually a member of Colvin's proposed class.